Argued and submitted October 3, 1979, reversed February 26, 1980

# FIREBAUGH, et ux,
*Petitioners,*

*v.*

# BORING, et ux,
*Respondents.*

## (No. CC 77-578, CA 11050, SC 26139)
607 P2d 155

Thomas E. Sweeney, Cannon Beach, argued the cause and filed a brief for petitioners.

Dan Van Thiel, of Anderson, Fulton, Lavis & Van Thiel, Astoria, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman,** Howell, Lent, Linde,*** and Peterson, Justices.

PETERSON, J.

---

**Holman, J., retired January 20, 1980.

*** Linde, J., did not participate in the decision of this case.

**PETERSON, J.**

In 1977 the defendants deposited a load of dirt in a private roadway, preventing the plaintiffs from using the roadway to reach their house, which was then under construction. The plaintiffs removed the dirt and thereafter filed this suit to (1) quiet title to a claimed prescriptive easement in the plaintiffs over the defendants' land, and (2) to enjoin defendants permanently from blocking or interfering with the easement. The trial court granted the requested relief, and the defendants appealed. The Court of Appeals reversed, holding "that the easement over defendants' land was for the special purpose of access to and from the water reservoir, and that when the reservoir property was sold and was no longer used as a reservoir, the easement was terminated." 39 Or App 189, 192, 591 P2d 421 (1979). We granted review to consider this question: Is a prescriptive easement extinguished by reason of a change in the condition or use of the dominant estate, absent any increased burden upon the servient estate?

## THE FACTS

For over 40 years the plaintiffs and their predecessors in interest used a roadway over the defendants' property for access to a water storage reservoir on the plaintiffs' property. The Cannon Beach Water Company, plaintiffs' predecessor, first used the road in the early 1920's and continued to use the road until the water company and its assets were purchased by plaintiff Firebaugh and his father in the mid-1930's, who continued to use the roadway. In 1972, the reservoir and property were sold to the City of Cannon Beach, but thereafter Cannon Beach built a new reservoir, discontinued use of the old reservoir, and reconveyed the property to the plaintiffs. The plaintiffs then built a residence upon the property, using part of the old reservoir as a foundation for their new home.

The roadway, which was about 100 feet long and 18 to 20 feet wide, was regularly used by passenger cars

and trucks traveling to and from the reservoir throughout the 40-year period. The road was described as an "all-weather road" and was used on a daily basis much of the time, sometimes "many times a day." The plaintiffs and their predecessors maintained the road with gravel and rock. In addition, a waterline was laid beneath the roadway.

The plaintiffs intended to continue to use the roadway for vehicular access to and from their home, and were so using the road at the time of trial. Neither the frequency of use nor the type of use was materially greater after the house was built than during the period the reservoir was in use.

The trial court wrote a memorandum opinion in which it found:

> "* * * [T]he plaintiffs have established by clear and convincing evidence that their use of the roadway in question has been open, exclusive, continuous, under claim of right for the appropriate statutory period and in a manner sufficiently hostile so that plaintiffs should be entitled to the matters prayed for in their complaint."

A decree was thereafter entered which provided that

> "* * * plaintiffs shall have an easement by prescription, said easement to be permanent until abandoned by the plaintiffs, but limited in width and length to the dimension of the roadway as it existed on February 3, 1978."

We agree with the trial court that the plaintiffs had established, by clear and convincing evidence, "that their use of the roadway in question has been open, exclusive, continuous, under claim of right for the appropriate statutory period and in a manner sufficiently hostile * * *." Therefore, a prescriptive easement existed over the defendants' property. Remaining for decision is the question whether a prescriptive easement is extinguished by reason of a change in condition or use of the dominant estate, absent any increased burden upon the servient estate.

[610]

IN DETERMINING WHETHER A PARTICULAR USE OF A PRESCRIPTIVE EASEMENT IS PERMISSIBLE, A COMPARISON SHOULD BE MADE BETWEEN (A) THE USE BY WHICH THE EASEMENT WAS CREATED, AND (B) THE PROPOSED USE

Most courts have adopted a rule that the extent of a prescriptive easement is limited by the use which created it.[1] The term "extent," in this context, means the scope of the privilege of use arising from an easement as against the owner of the servient tenement. Within the scope of the privilege of use are included the elements of time, place, manner and purpose of use. 5 Restatement of the Law of Property 2991 (1944). This is the rule in Oregon. *Walter v. Martinson,* 276 Or 411, 414, 555 P2d 21 (1976).

In the instant case the trial court found that a prescriptive easement existed upon the land now owned by the defendants in favor of the plaintiffs, the length and width of the easement being that which was in existence on the day of trial. The decree also provided: "* * * said easement to be permanent until abandoned by the plaintiffs * * *."

Had there been no change in the condition or use of the dominant tenement, the easement would have existed indefinitely.[2] But here there has been a change in the condition and use of the dominant estate. The defendants claim, and the Court of Appeals held, that if the condition or use of the dominant estate is altered, the appurtenant prescriptive easement is extinguished. We turn to a discussion of that question.

Some authorities contain language which appears to support the proposition that a prescriptive easement

---

[1] *See* 5 Restatement of the Law of Property § 477 (1944); 3 R. Powell, The Law of Real Property § 416 (1979); 2 G. Thompson, Real Property § 349 (1961).

[2] "A right acquired by prescription is as good as one acquired by deed or grant," 2 G. Thompson, Real Property 290, § 349 (1961); 3 R. Powell, The Law of Real Property 34-251, § 423 (1979).

is extinguished when the condition or use of the dominant tenement is altered. Section 8.69 of II American Law of Property (1952) contains such language:

"Most prescriptive easements are easements appurtenant. They are created by the use of one piece of land for the benefit of the user as the possessor of another piece. Such a use is necessarily qualified by the condition of the land possessed as of the time the use was made. As the condition of that land changes and developments take place upon it there will be need for a change in the use of the servient tenement if the easement is to be of genuine benefit to the possessor of the dominant tenement. The problem is thus presented as to how uses required by new needs can be justified under a prescriptive right created by uses which satisfied old needs. The new needs must be satisfied if the easement is to be really effective. Yet there is no room for the assumption made in the case of an easement created by conveyance that the conveyance, having by its nature a prospective operation, should be assumed to have been intended to accommodate future needs. All that the owner of the servient tenement subject to a prescriptive easement has done is to fail to make effective objection to the use by which it was created. It seems difficult to go further in the way of allowing new needs of a dominant tenement to be accommodated by a prescriptive easement than to hold that new uses will be permitted to the extent that acquiescence in the old uses justifies the inference that effective objection to the new uses would not have been made had such uses occurred during the prescriptive period. * * *" (Footnote omitted.)

4 H. Tiffany, The Law of Real Property 1041, § 1208 (3d ed 1975), upon which the Court of Appeals relied, states:

"* * * 'But if the condition and character of the dominant estate are substantially altered, as in the case of a way to carry off wood from wild land, which is afterwards cultivated and built upon, or of a way for agricultural purposes to a farm, which is afterwards turned into a manufactory or divided into building lots, the right-of-way cannot be used for new

purposes, required by the altered condition of the property, and *imposing a greater burden upon the servient estate.'* * * *" (Footnote omitted; emphasis added.)

Note, however, that neither Tiffany, *supra,* nor the American Law of Property, *supra,* hold that the easement is *extinguished* by reason of a change in condition of the dominant estate alone. Tiffany indicates that one of the reasons for the limitation of use of the prescriptive easement is the imposition of a "greater burden upon the servient estate."

An analysis of the cases cited in those texts reveals that in almost every such case there existed a substantial increase in the burden upon the servient tenement and one or more of the following: (a) termination of the need for access to the dominant estate; (b) a change in the nature of use of the easement; or (c) a substantial change in the condition of the dominant tenement not involving a normal evolution of the use of the dominant estate.[3]

In its opinion, the Court of Appeals relied on 4 H. Tiffany, *supra,* and *Hahn v. Baker Lodge, No. 47,* 21 Or 30, 27 P 166 (1891). *Hahn* is distinguishable from the case at bar. There the plaintiff owned a two-story building and conveyed a room within the second floor

---

[3] *See* cases cited in footnotes 17 and 18, 4 H. Tiffany, The Law of Real Property 1046, § 1208 (3d ed 1975). For example, in *Parks v. Bishop,* 120 Mass 340 (1876), the Massachusetts court opined that an easement to remove wood from land, which was afterward cultivated and built upon, would not extend to the latter use, because a greater burden would be imposed upon the servient estate. *See also Baldwin v. Boston & Maine Railroad,* 181 Mass 166, 63 NE 428, 429-430 (1902):

"* * * But in all these cases there has been a substantial change in the nature of the use, and a consequent increase of burden upon the servient estate. In the case before us the judge has found that there has been no such increase. No case has been shown to us, nor are we aware of any, where the change in the use of the land has been only in degree, and not in kind, in which it has been held that the way could not be used to the land in the changed condition, especially if there was no increased burden upon the servient estate. To base a distinction upon such a change would be unwise in theory, and impracticable in practice. * * *"

to the defendant, including an easement for ingress and egress. The room was used for lodge meetings until the building was substantially destroyed by fire and the room was wholly destroyed. The defendant claimed that it had a right to reconstruct the upper story in order to recreate a room to be used as a lodge hall in place of the one destroyed by fire. On plaintiff's suit for an injunction this court held that

> "* * * it is the middle room or hall of the upper story which was granted to the defendant, and not a part of the building; that the defendant did not acquire any right of ownership in the building or any part of it, but in the room or space enclosed by that part of the building which was described and identified as the middle room or hall of the upper story. This is owned, and so long as it existed, and its identity was preserved, the defendant had the right to its enjoyment. But when the fire destroyed the building, and the identity of the room and its existence as such were extinguished and at an end, there was nothing remaining upon which the defendant's conveyance could operate, and its rights at once terminated." 21 Or at 33.

Based upon the complete destruction of the dominant estate, there being no practical use for an easement to an empty air space, the court held that the easement expired with the destruction. There, the dominant estate was destroyed. Here the only change in the dominant estate was a change in use. As stated above, the quotation from 4 H. Tiffany, *supra,* appears to require, in addition to a change in condition or use of the dominant estate, a "greater burden upon the servient estate." 3 H. Tiffany, The Law of Real Property 346, § 809 (3d ed 1939) states the rule as follows:

> "In the case of a prescriptive easement, the question whether a change in the dominant tenement affects the right to exercise the easement depends, in a general way, upon whether the effect of the change is materially to increase the burden upon the servient tenement or alter the character of the user thereof." (Footnote omitted.)

[614]

Most courts hold that even where there has been a change in the condition or use of the dominant estate, if the changed condition of the dominant tenement results from a normal development of the dominant tenement the prescriptive easement continues to exist, albeit limited in scope to the use during the prescriptive period.[4]

Section 478 of the Restatement of Property (1944) considers permissible changes in use of prescriptive easements:

"In ascertaining whether a particular use is permissible under an easement created by prescription a comparison must be made between such use and the use by which the easement was created with respect to

"(a)   their physical character,

"(b)   their purpose,

"(c)   the relative burden caused by them upon the servient tenement."

In Comment *a* to section 478, it is stated:

"* * * The variations permitted between the uses made under a prescriptive easement and the adverse use by which it was created are those only which are consistent with that pattern. Uses which conform to it must have characteristics sufficiently resembling those of the adverse use by which an easement was created so that they may fairly be described as being the same use. The characteristics most important for the purpose of determining the existence of the necessary likeness are those of (1) the physical attributes of the two uses, (2) their purposes, and (3) their relative burdens upon the owner of the servient tenement * * *."

Section 479 deals specifically with changes in condition of the dominant tenement:

"In ascertaining whether a particular use is permissible under an easement appurtenant created by prescription there must be considered, in addition to the factors enumerated in § 478, the needs which

---

[4] 3 R. Powell, The Law of Real Property 34-210 n 17, § 416 (1979).

[615]

result from a normal evolution in the use of the dominant tenement and the extent to which the satisfaction of those needs increases the burden on the servient tenement."

Comment *a* to section 479 states:

"The use authorized by an easement appurtenant which has been created by prescription cannot be limited to a use for the benefit of the dominant tenement in the condition in which it was during the period of prescription. All land is subject to constant change in its condition. Both natural forces and human activities contribute to the change. Every tract of land is constantly being altered, sometimes slowly, sometimes rapidly, under the influence of natural forces and human activities. The result of this ever-changing nature in the condition of land is that the requirements of dominant tenements are constantly changing. To be useful as such, easements appurtenant to dominant tenements must be of benefit to them in a changed condition. The extent of an easement created by prescription can never be exactly measured by the condition of the dominant tenement during the period of prescription. Yet, since the extent of an easement appurtenant created by prescription is determined by the use made during the period of prescription, the condition of the dominant tenement during that period in some degree limits the use which may be made under the easement. The problem is to determine what that degree is."[5]

*Pipkin v. Der Torosian,* 35 Cal App 3d 722, 111 Cal Rptr 46 (1973), is illustrative. There, previous owners of the dominant tenement had a prescriptive easement over the servient tenement for agricultural and cultivation purposes. During the prescriptive period the only use had been for agricultural purposes. The dominant estate was thereafter sold to the plaintiffs,

---

[5] *See also* 3 R. Powell, The Law of Real Property 34-207 - 34-209, § 416 (1979):

"* * * In determining whether a specific use is within the pattern of the establishing uses, courts consider (1) their similarity or dissimilarity of purpose; (2) their respective physical attributes; and (3) the relative burden caused by them upon the servient parcel. * * *" (Footnotes omitted.)

who built a residence on the property. The defendants claimed, and the trial court held, that the easement should be limited to usage "as an easement and right-of-way * * * for agricultural and cultivation purposes" and that the easement "was not for residential use * * *." The practical effect of the trial court's holding was to bar access to the plaintiffs' house over that roadway. The California appeals court stated the issue as follows:

"The pivotal issue is whether the court erred in defining the extent and scope of the easement over the Boydstun property exclusively in terms of the use (agricultural and cultivation) to which the dominant tenement was put during the prescriptive period, and excluding their use of it for pedestrian and vehicular traffic to service the Pipkin property for residential and other purposes." 111 Cal Rptr at 48.

The court held that the use of the dominant tenement during the prescriptive period is only one of the germane factors. The court adopted the Restatement analysis[6] that in ascertaining the extent of permissible usage of a prescriptive easement, consideration should be given to (a) the character of use, (b) the purpose of use, and (c) the relative burden caused by the proposed and former uses on the servient tenement. Quoting from *Gaither v. Gaither,* 165 Cal App 2d 782, 332 P2d 436, 438 (1958), the court stated:

"* * * If the change is not in the kind of use, but merely one of degree imposing no greater *burden on the servient* estate, the right to use the easement is not affected. * * *" (Emphasis added in *Pipkin.)* 111 Cal Rptr at 49-50.

The court concluded its discussion as follows:

"Reason supports this conclusion. For example, assuming a home should be built on the Pipkins' property, it should be of no moment to the Boydstuns whether persons riding in a pickup or automobile over the easement are going to the Pipkins' property for the purpose of going to the home or for the

---

[6] 5 Restatement of Property § 478 (1944).

purpose of cultivating crops so long as the amount of traffic is not substantially increased. On the contrary, restricting the use of the easement to servicing Pipkins' property for agricultural purposes does not guarantee or prevent a possible radical change in the burden upon the servient estate. Such a change in burden could occur by an increase in the intensity of use, change in the crop pattern or in the method of farming the dominant tenement.

"The ultimate criterion in determining the scope of a prescriptive easement is that of avoiding increased burdens upon the servient tenement * * * while allowing some flexibility in the use of the dominant tenement * * *." 111 Cal Rptr at 50.

We are persuaded that an approach which considers only the use made of the dominant tenement for measuring the permissible use of a prescriptive easement inappropriately precludes consideration of the "needs which result from a normal evolution in the use of a dominant tenement." 5 Restatement of Property § 479 (1944).

We hold that in determining whether a particular use of a prescriptive easement is permissible, a comparison should be made between (A) the use by which the easement was created, and (B) the proposed use considering these factors: (1) the relative burdens upon the servient tenement; (2) the nature and character of the uses of the easement; and (3) the purposes achieved through the uses of the easement.

In the case at bar, the plaintiffs intend to use the roadway in the same way as in the past — to provide ingress and egress to their property by motor vehicles. There is no change in the nature and character of the proposed use of the roadway. There is no evidence of any substantial increase in burden upon the servient estate. The only arguable difference between the proposed use and the former use is in the purpose achieved through the use of the easement. The former use provided access to a reservoir; the proposed use

[618]

provides access to a residence.[7] Moreover, the use of the plaintiffs' property for construction of a residence appears to be a normal evolution in use of the property.[8]

We conclude that the Court of Appeals erred in holding that the easement terminated "when the reservoir property was sold and was no longer used as a reservoir."

Reversed.

[7] Note this comment to 5 Restatement of Property § 478(b) (1944):

"The purpose sought to be served by an asserted use may be so different from the purpose of the adverse use by which the easement was created as to be a controlling factor in a holding that the claimed use is not permissible. Thus, a diversion of water for power purposes is not, ordinarily at least, justifiable under an easement created by a diversion of water for purposes of irrigation. Yet, some degree of variation in the purpose of a use made under a prescriptive easement from the purpose of the use by which it was created must be permitted for the two cannot be quite identical though, as the degree of difference in purposes becomes smaller, it becomes necessary to take greater account of variance in physical use and increases in the burden upon the servient tenement * * *."

*See* 2 G. Thompson, Real Property 285, § 349 (1961). *See also Bartholomew v. Staheli,* 86 Cal App 2d 844, 195 P2d 824 (1948) (change in use of dominant estate from farm to nudist colony impermissibly increased use of easement); Annot., 5 ALR3d 439 (1966).

[8] A tabular analysis of the rule as applied to the facts is set forth below:

| | A. Use by which the easement was created | B. Proposed use |
|---|---|---|
| 1. Burdens upon the servient estate. | Owner of servient estate lost practical use of land over which easement runs. Servient estate is subject to such interference with use and enjoyment as arises from passenger cars and trucks going to and from the dominant estate. | Same. No increased usage. |
| 2. Nature and character of the uses of the easement. | Use of roadway on daily basis by passenger cars and trucks. | Same. No change in nature or character of use. |
| 3. Purposes achieved. | Access to reservoir on dominant estate. | Access to house on dominant estate. |