Argued and submitted October 31, 1980, affirmed as modified January 19, 1981

# KONDOR et al,
*Respondents,*
*v.*
PROSE et al,
*Appellants.*

(No. 78-1358-E, CA 16885)

622 P2d 741

Walter L. Cauble, Grants Pass, argued the cause for appellants. With him on the briefs was Schultz, Salisbury & Cauble, Grants Pass.

Jack Davis, Ashland, filed the brief for respondents.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Defendants appeal from a decree declaring that plaintiffs have an easement by prescription over a certain road through defendants' property which provides the only existing access to plaintiffs' parcel. Defendants contend that the ten-year prescriptive period (ORS 12.050) was interrupted by erection of a gate across the road in question and that the plaintiffs failed to prove that use of the road by their predecessors and others was sufficiently continuous and adverse to defendants' rights to satisfy the elements of prescription. Defendants further assign error to fixing the scope of the easement at 20 feet. We review the evidence *de novo. Thompson v. Schuh,* 286 Or 201, 203, 593 P2d 1138 (1979).

The parcels in question were owned by common grantors, the Barringtons, until 1937, at which time Sylvia Fox, the daughter of the Barringtons, purchased what is now plaintiff's parcel from them. A road was build in 1939 to provide access to that parcel which lies generally north of what is now defendants' parcel. About 1950, Don Mayfield constructed and operated a sawmill on the southern parcel. Shortly thereafter, he built the road in question which runs generally north and south and connects at the mill with the older road. Since that time the older road has fallen into disuse and has not been passable for at least 20 years.

In 1950, the Barringtons conveyed the south parcel to the Cardons, who held it until 1955, when they sold it to the Pattersons. The Pattersons conveyed the property to defendants in 1956. None of the deeds made mention of any easement over the road in favor of Mrs. Fox. She held the northern parcel until 1978, when she sold it to plaintiffs. Between 1946 and 1962, Don Mayfield lived and kept belongings in a cabin on the northern parcel. In 1962, the cabin was rented to Don Boat, who resided there until 1966. Thereafter, the property was vacant until the Kondors bought it.

The road in question was built with the permission of the Barringtons. Don Mayfield testified that he used it daily for bringing in logs and for access to the cabin on the

northern parcel. He continued to use the road after the southern parcel was sold, without asking anyone. He testified as follows in response to the question of whether Mr. Prose had given him permission to use the road:

> "Well, you could call it permission. We never said whether you couldn't use it or what, because I rented from the Barringtons, and the next party come, still renting from them on down through the line, so I supposed it was legal to go over the road at all times, so in my mind the road was useable, as far as I'm concerned it was the road to go to that property."

There was one discussion in which defendants apparently gave Mayfield permission to remove some of Mayfield's possessions from the cabin across the road, but the date of this conversation and Mayfield's reason for asking are uncertain.

Don Boat's son testified that his family had used the the road regularly as access to the cabin between 1962 and 1966. Sometime in the late 1950s, defendants erected a gate across the mouth of the road to keep cattle in. Boat testified that he was informed either by defendants or by his father, who had talked with defendants, that it was permissible to enter through the gate, so long as they closed it behind them. According to Mayfield and Boat, there was never any objection by defendants or their predecessors to the use of the road.

In the early 1960s, in response to vandalism of the cabin on the northern parcel, defendants and Mrs. Fox erected a more substantial gate across the mouth of the road and put up a "No Trespassing" sign with both Prose's and Fox's names on it. There was considerable discussion about whose lock was placed upon it, but it appears, in any case, that Fox had a key to it and entered freely.

Between 1966 and 1978, the road was used infrequently by Fox and by those persons who entered the property with her permission. Proof of use during this period falls short of the clear and convincing standard required for establishing continuous use and the evidence will not be further detailed. *Thompson v. Scott*, 270 Or 542, 547, 528 P2d 509 (1974). Plaintiffs' claim must have ripened, if at all, between 1950 when the road was first built and 1966 when the Boats moved out.

Defendants have used their property largely for grazing cattle and for cutting firewood. Although they have a trailer on the property, it is unclear from the testimony whether or not they live on the property. Their brief states that the road in question passes near their "residence," but Mr. Prose testified that he used the road mainly for hunting and cutting wood and marked his residence on an exhibit some distance from the road. Defendants testified that they did not observe the extensive use of the road by Mayfield and the Boats, nor even the intermittent use of the road by Fox or others. According to them, no one, before plaintiffs bought the property, challenged their right to exclude people from the road and that those who had used it had done so with their permission.

The dispute in question arose in July, 1978, when plaintiff Irene Kondor allegedly tore down the gate across the road because she felt defendants were trying to block her right of way. Other reprisals, obstructions and eventually this lawsuit followed. Plaintiffs want to move a trailer onto the property and reside there. Defendants intend to construct an irrigation reservoir which would submerge a portion of the road. They state that they are willing to give plaintiffs access across another portion of their land.

■■  In order to establish a prescriptive easement, plaintiffs must show an open and notorious use of land adverse to the rights of defendants for a continuous and uninterrupted period of ten years. *Thompson v. Scott, supra,* 270 Or at 546-47; *City of Ashland v. Hardesty,* 23 Or App 523, 543 P2d 41 (1975), *rev den* (1976). Continuous use does not mean constant use; it refers only to the character of the user's state of mind and requires only that the alleged easement be used in a manner consistent with the needs of the user. *Arrien v. Levanger,* 263 Or 363, 368-69, 502 P2d 573 (1972); *Hay v. Stevens,* 262 Or 193, 497 P2d 362 (1972).

The evidence here shows that between 1950 and 1966, Mayfield, and then Boat, used the road in question as access to the cabin on the northern parcel. Although defendants may not have observed this use, it was apparently constant as well as continuous. At least Mayfield, who lived there between 1950 and 1962, testified that he assumed he had the right to use the road and did so openly.

■     Defendants argue that plaintiffs' predecessors' use of the road was interrupted by erection of the gate. There is no evidence that Mayfield or Boat discontinued their use of the road because of it nor asked defendants for permission to pass through it. It was not intended to bar passage by Fox's tenants, merely to keep defendants' cattle in.

■     In the context of prescriptive easements, the requirement that the use be "adverse" to the rights of the property owner means that the use is not in subordination to those rights. *Arrien v. Levanger, supra,* 263 Or at 371. Therefore, even if the user mistakenly believes he has the right to use the easement, that use is sufficiently adverse. *City of Ashland v. Hardesty, supra,* 23 Or App at 527-28. Unlike adverse possession of land, a showing of open, continuous use of an alleged easement for a period of ten years creates a presumption that the use is under a claim of right and adverse to the rights of the owner. The owner must then show that the use was made with his permission. *Trewin v. Hunter,* 271 Or 245, 246-47, 531 P2d 899 (1975); *Feldman et ux. v. Knapp et ux.,* 196 Or 453, 471-73, 250 P2d 92 (1952).

■■     As we have held, there is sufficient evidence of continuous, open and notorious use for the period between 1950 and 1966. We conclude that defendants have failed to show that such use was with their permission. Mayfield testified that the Barringtons gave initial permission to construct the road. Immediately thereafter, however, they sold the property to the Cardons. Mr. Cardon testified that he was aware of the use and that no provision for an easement was apparent from the deed. He did not object, however, nor did his successors, the Pattersons, who testified that they did not give Mayfield permission, but assumed he had the right to use the road. Defendants also testified that they were aware of the use and knew the deed was silent on the question of easements. They contend that Mayfield, Boat, Fox and the others used the road with their permission.

■     The first arguable evidence that permission was requested or communicated to anyone using the north parcel was Mayfield's testimony of his discussion with Mr. Prose regarding removal of his possessions from the cabin. The date of this conversation is uncertain and was likely to

have occurred in 1962 when Mayfield left the premises entirely. At that point the ten-year period had passed and the prescriptive easement had ripened. The most likely reading of the testimony in our view is that the Proses and their predecessors acquiesced in use of the road by Fox's tenants, but acquiescence does not equal permission. *Feldman et ux. v. Knapp et ux., supra,* 196 Or at 469.

■■■■■ We conclude that plaintiffs have a prescriptive easement over the road in question. The trial court established the scope of the easement at 20 feet. The general rule is that the scope of a prescriptive easement is determined by the use by which it was created. *Walter v. Martinson,* 276 Or 411, 414, 555 P2d 21 (1976). The dominant estate owner may make a different, more intensive use of the easement, provided such use does not substantially increase the burden on the servient estate. *Firebaugh v. Boring,* 288 Or 607, 618, 607 P2d 155 (1980). The testimony given by Mr. Mayfield was that he ploughed the road with a "Cat" with an eight foot blade and that the width of the road was perhaps a bit more than that. Defendant testified that the road was less than ten feet wide. The most intensive use of the road was made by Mayfield, who drove a log truck seven feet six inches wide along it. We conclude that the easement is ten feet wide.

Affirmed as modified.