Argued and submitted January 18, reversed in part; otherwise affirmed
October 19, petition for review denied December 20, 1994 (320 Or 492)

John Q. HOUSE
and Rose House,
husband and wife, and
Claude W. Taylor and Beverly A. Taylor,
husband and wife,
*Respondents,*

*v.*

Terry HAGER
(aka Terry L. Hager)
and Dessa Hager (aka Dessa L. Hager),
husband and wife,
*Appellants,*

*and*

Roy MARTIN
and Joan B. Martin,
husband and wife,
*Respondents,*

*and*

Karen Elizabeth CONLEY
(fka Karen Elizabeth Francis),
Crystal M. Matlock, South Valley State Bank,
United States of America,
acting through Farmers Home Administration,
Minnie M. Davis, Richard Henry Francis,
William J. Rajnus, Jr.,
Bank of the Northwest, Ann S. Fairclo,
and First Interstate Bank of Oregon, N.A.,
*Defendants.*

(9103389CV; CA A78329)

883 P2d 261

Michael L. Spencer argued the cause and filed the brief for appellants.

George Kelly argued the cause and filed the brief for respondents John Q. House, Rose House, Claude W. Taylor and Beverly A. Taylor.

No appearance for respondents Roy Martin and Joan B. Martin.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

LANDAU, J.

**LANDAU, J.**

Plaintiffs initiated this action for declaratory and injunctive relief, asking that they be declared to have acquired a prescriptive easement over a road crossing a ranch owned by defendants Terry and Dessa Hager, and that defendants be prevented from interfering with plaintiffs' use of that road. Cross-claim defendants Roy and Joan Martin joined in requesting the same relief. The trial court found for plaintiffs and cross-claim defendants and entered judgment in their favor. On *de novo* review, ORS 19.125(3), we affirm in part and reverse in part.

Plaintiffs own a parcel of Klamath County ranch land originally owned by Paul and Ann Fairclo. The Fairclos first leased, and then purchased, the land in 1958. In the late 1950s, Fairclo and a neighbor constructed a road running south from the Fairclo ranch, across the ranch of Jess Francis, to the Sprague River Highway. The Fairclos used the road for access to the highway for irrigation, for running cattle and for other agricultural uses. They used the road most frequently during the irrigation season, sometimes on a daily basis. Occasionally they used the road to haul in large equipment on "low boys" and trucks and to bring in tractors and caterpillars to their property.

Paul Fairclo was told by a neighbor that "it was alright" with Francis for Fairclo to use the road. Fairclo never knew whether Francis actually gave permission to use the road. As Fairclo testified at trial, "I know he never objected. That's all I can tell you." As it turns out, Francis did not own the property over which the road was built at that time. The Francis ranch had previously been placed in trust and was owned by U.S. National Bank, which never gave Fairclo permission to cross that property. Nevertheless, Fairclo continued to use the road for more than 20 years.

Sometime before 1974, the Martins came into possession of a neighboring parcel located between the Fairclo property and the highway. The Martins also used the road to the highway. They occasionally performed maintenance on the road, as well. Meanwhile, the Fairclos continued to use the road.

In 1978, the Hagers purchased the Francis ranch, over which the north-south road was located. Terry Hager testified that, when he and his wife came to the area, the road was 12-15 feet wide. Subsequently, they improved and widened the road to 30 feet in width. During that time, the Fairclos continued to use the road.

In 1988, the Fairclos sold their ranch to plaintiffs John and Rose House, who continued to use the road, principally for agricultural purposes. In 1991, they divided the ranch and sold a portion to plaintiffs Claude and Beverly Taylor. The Taylors intend to ranch and to build a residence on the portion that they purchased. Shortly after they purchased the property, the Hagers blocked access to the north-south road.

The Houses and the Taylors responded by bringing this action, naming as defendants the Hagers and other persons who own or have an interest in property through which the road crosses, including the Martins. Plaintiffs sought a declaration that they hold an easement, acquired by prescription, to use the road passing through each of defendants' properties. The Martins cross-claimed, seeking a declaration that they also hold a prescriptive easement to use the road.

The trial court concluded that plaintiffs and the Martins had acquired a prescriptive easement to use the north-south road as it currently exists. The Hagers appeal that decision, raising four assignments of error.

The Hagers first argue that the evidence does not support the trial court's conclusion that plaintiffs had acquired an easement by prescription. In particular, they contend that, because Fairclo subjectively believed that he had permission from the landowner to use the road, and because the Fairclos' use did not interfere with the owner's use, the Fairclos' use was permissive rather than adverse. Relying on the presumption of adverseness that attaches to an open, continuous use for the statutory period, plaintiffs contend that their predecessors' use of the road was adverse.

■■ To acquire an easement by prescription, plaintiffs must show, by clear and convincing evidence, that they or their predecessors used the north-south road on the Hagers'

land in an open, notorious, adverse and continuous manner for a period of 10 years. *Thompson v. Scott*, 270 Or 542, 546-47, 528 P2d 509 (1974). In this case, there is no dispute that plaintiffs' and their predecessors' use of the north-south road was open and notorious; the only dispute is whether their use was adverse. A use that is shown to be open and continuous for a 10-year period is presumptively adverse. Defendants may rebut that presumption by showing that the use was permissive; *Feldman et ux. v. Knapp et ux.*, 196 Or 453, 471, 250 P2d 92 (1952); *Stone v. Henry Enterprises, Inc.*, 95 Or App 355, 358, 768 P2d 442 (1989), or by showing that plaintiffs and their predecessors merely used an existing road in a way that did not interfere with defendants' use. *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969); *Stone v. Henry Enterprises, Inc., supra*, 95 Or App at 358.

To rebut the presumption of adverseness, there must be evidence that the use was permissive. In *Feldman et ux. v. Knapp et ux., supra*, for example, the plaintiffs established their use of a driveway for the requisite period, thus giving rise to the presumption that their use was adverse. The defendants could offer no evidence that they had given the plaintiffs permission. Instead, they relied on their uncommunicated acquiescence. That, the Supreme Court held, was insufficient to rebut the presumption:

> "The burden of proof was upon defendants to rebut [the presumption of adverse use] if, in fact, it could be rebutted. Evidence of mere acquiescence in, as distinguished from permission for, such use on the part of the owners of the servient estate is insufficient for the purpose." 196 Or at 472.

In this case, the evidence is undisputed that neither Francis nor U.S. National Bank gave permission to Fairclo to use the north-south road. At best, the evidence indicates that they acquiesced in the use of the road. That evidence, under *Feldman et ux. v. Knapp et ux., supra*, is insufficient.

The Hagers argue that, although there is no evidence that Francis or U.S. National Bank actually gave permission, Fairclo nevertheless *believed* that he had permission, and that is sufficient to rebut the presumption of adverse use. Even assuming that Fairclo's belief might be relevant, Fairclo did not testify that he thought he had permission. His testimony was that "I know [Francis] never objected. That's all I

can tell you." We find no basis for concluding that Fairclo's use of the north-south road was permissive.

■     The Hagers insist that the presumption of adverse use is rebutted in the light of evidence that the Fairclos' use of the road did not interfere with the Hagers' and their predecessor's use. We disagree. That evidence might be sufficient to rebut the presumption of adverseness in a case involving use of an *existing* road. It is not sufficient where, as here, the road was constructed without the servient owner's permission. *See Trewin v. Hunter*, 271 Or 245, 247, 531 P2d 899 (1975); *Woods v. Hart, supra*, 254 Or at 437; *Read v. Dokey*, 92 Or App 298, 301, 758 P2d 399 (1988).

In short, the Hagers have not rebutted the presumption of adverseness that attaches to the Fairclos' use of the road. The Fairclos established an easement by prescription to use the north-south road. Plaintiffs acquired the easement when they obtained title to the property, formerly owned by the Fairclos, which was benefited by the easement. *See Tusi v. Jacobsen*, 134 Or 505, 508, 293 P 587, *reh den* 134 Or 516 (1930). The trial court did not err in recognizing plaintiffs' right to use the road.

In their second assignment of error, the Hagers contend that, by granting an easement to the Taylors for residential use, the trial court impermissibly expanded the easement's scope. The Hagers contend that the Fairclos used their property strictly for agricultural purposes and that their use of the road was similarly limited, while the Taylors intend to use their property for residential purposes and to enlarge the use of the road accordingly. Plaintiffs argue that the Taylors' use will place no additional burden on the Hagers' property and is, therefore, permissible.

In *Firebaugh v. Boring*, 288 Or 607, 607 P2d 155 (1980), the Supreme Court rejected the notion that the scope of a prescriptive easement is limited by the use made of the dominant property at the time of the easement's creation. That approach, the court stated,

> "inappropriately precludes consideration of the 'needs which result from a normal evolution in the use of a dominant tenement.'

"[Therefore,] in determining whether a particular use of a prescriptive easement is permissible, a comparison should be made between (A) the use by which the easement was created, and (B) the proposed use[,] considering these factors: (1) the relative burdens upon the servient tenement; (2) the nature and character of the uses of the easement; and (3) the purposes achieved through the uses of the easement." 288 Or at 618. (Citation omitted.)

■ In this case, there is nothing to indicate that plaintiffs' use will substantially increase the burden on the Hagers' property. Although the Hagers aver that the Fairclos' use of the road was "sporadic," the record clearly indicates that, for much of the year, the Fairclos used the road on at least a daily basis. Assuming that the Taylors will use the road on a daily basis throughout the year, that use does not represent a substantial increase in the burden on the Hagers' property. Nor is there evidence that plaintiffs will change the nature and character of the road's use. It will continue to be used as a means of ingress and egress to the dominant property for motor vehicles. As for the purposes achieved through the use of the easement, there is some change. Although the Fairclos originally used the north-south road principally for agricultural purposes—for everything from cattle to caterpillars—the Taylors now propose to use the road for ingress and egress to a residence. However, in the light of the character of the most recent use, and the fact that it imposes no new burdens on the servient estate, we conclude that the Taylors' use is permissible.

In a related vein, the Hagers next assign error to the trial court's conclusion that the width of plaintiffs' easement is the entire 30 feet of the road as it currently exists. Although they acknowledge that they have already widened the road to 30 feet, they insist that the scope of plaintiffs' easement to use that road is limited by the fact that plaintiffs established use only of a road 15 feet wide. Plaintiffs argue that there is no evidence that the Fairclos, or anyone else who used the road, ever limited that use to 15 feet. Even if that were not so, they argue, they should be permitted to use the entire existing road as the "natural evolution" of the original easement.

■ We agree with plaintiffs. The testimony does not indicate that the use of the road was limited to 15 feet. Indeed,

it is difficult to imagine herding cattle up and down only a 15-foot-wide strip of road. There was also testimony that the road was used to haul equipment on low boys and trucks and to bring in tractors and caterpillars. During the periods of most intensive use, the road saw use by six or seven trucks "running solid" during harvest.

■ In any event, as the Supreme Court stated in *Firebaugh v. Boring, supra,* in determining the scope of a prescriptive easement, we are not strictly limited by the extent of the use by which the easement was created. Instead, we are to compare that use with the proposed use, considering the nature of the proposed use, its purposes and its effect on the servient owner. 288 Or at 618. In this case, as we have already concluded, the proposed use is not appreciably different in nature or more burdensome than the original use by which the easement was created. As for burdens on the servient owner, the fact that the Hagers themselves already have widened the road to 30 feet undercuts any suggestion of unreasonable harm. The trial court did not err in granting plaintiffs an easement that encompassed the entire 30-foot-wide road.

Finally, the Hagers assign error to the trial court's decision to grant to the Martins a prescriptive easement to use the north-south road. The Hagers assert, as they did with respect to plaintiffs, that there is insufficient evidence of adverse use to support a prescriptive easement in favor of the Martins.

■ The evidence shows that the Martins have used the road openly and continuously since 1974. Therefore, as with plaintiffs, a presumption arises that their use was adverse to the rights of the owner of the servient parcel. Unlike plaintiffs, however, the Martins cannot claim that they or their predecessor constructed the road over which they now claim an easement. Moreover, there is no evidence that their use in any way interfered with the servient owner's use. Because the evidence shows that they have simply taken advantage of an existing way, and have not interfered with the use of the Hagers or their predecessors, the presumption of adverseness is rebutted. *Trewin v. Hunter, supra,* 271 Or at 247-48; *Woods v. Hart, supra,* 254 Or at 437-38; *Stone v. Henry Enterprises, Inc., supra,* 95 Or App at 358.

■ ■ The fact that the Martins maintained the north-south road for a period of time does not assist them. Merely because a person has maintained a roadway does not necessarily establish that he or she is asserting a *right* to use it, since "it is equally inferable that [the person] contributed the work and money to compensate the servient owners for the privilege of using the way." *Woods v. Hart, supra,* 254 Or at 436. *See also Read v. Dokey, supra,* 92 Or App at 301. Accordingly, the Martins failed to prove a vital element of their cross-claim, and the trial court erred in granting them a prescriptive easement to use the road across the Hagers' land.

Judgment declaring easement in favor of respondents Roy Martin and Joan B. Martin reversed; otherwise affirmed.