Argued and submitted February 23, reversed on appeal; reversed and remanded in part with instructions, and otherwise affirmed on cross-appeal October 17, 2001

## R & C RANCH, LLC,
an Oregon limited liability company,
*Respondent - Cross-Appellant,*

*v.*

## Charles KUNDE,
*Defendant,*

*and*

## BUCKHORN RANCH, LLC,
*Appellant - Cross-Respondent.*

95-7772; A107289

33 P3d 1011

Dennis P. Brookshire argued the cause for appellant - cross-respondent. With him on the reply brief was Buckley LeChevallier P.C.

Robert L. Nash argued the cause and filed the briefs for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Defendant Buckhorn Ranch, LLC, appeals from a judgment awarding plaintiff a statutory way of necessity through its ranch, arguing that the trial court erred in construing the relevant statutes. Plaintiff cross-appeals, arguing that the court erred in refusing to declare that it had a prescriptive easement across defendant's property and that it was also entitled to damages, in dismissing its claim for punitive damages, and in awarding defendant attorney fees. On cross-appeal, we reverse and remand with instructions to enter a declaration that plaintiff has a prescriptive easement and to consider plaintiff's damages claim. Otherwise, we affirm the trial court's judgment on cross-appeal. On appeal, because plaintiff has a prescriptive easement over defendant's property, we reverse the trial court's judgment granting plaintiff a statutory way of necessity.

Plaintiff and defendant are limited liability companies that own and operate adjacent ranches near the John Day River in Gilliam County, with parts of plaintiff's ranch extending into Wheeler County. Both parties purchased their ranches in 1994. Over the years, several owners and tenants have occupied the land that forms the two ranches, and, at times, there have been multiple owners of different parcels within each party's land. Although the chain of title is somewhat complex, it appears that parts of defendant's ranch were first acquired by patent from the United States in 1897, and plaintiff's predecessors began acquiring their land in the 1920s. No significant portion of the two ranches was ever under common ownership. Throughout this time, the parties' land has been used for, among other things, wheat farming and cattle ranching.

The John Day River forms much of the western border of plaintiff's ranch, and defendant's ranch lies immediately to the east. Most of the land to the north of plaintiff's ranch is owned by the Bureau of Land Management. Butte Creek Road runs along the southern border of plaintiff's ranch. It provides access to parts of plaintiff's ranch and to other land south of the road.

Plaintiff's ranch consists of approximately 5,200 to 5,400 acres. Although it is, for the most part, one contiguous parcel of real property, it is divided geographically into two distinct parts: 200 acres of "low ground" and over 5,000 acres of "high ground." The low ground is located near the river and is where plaintiff's residence and ranch headquarters are located. The high ground lies to the east of the low ground and continues until defendant's property. The low and high ground are separated by steep cliffs—one witness described it as "billy goat" terrain—and the elevation of most of the high ground is about 2,000 feet higher than the low ground. The low ground has been used primarily for farming and the high ground for grazing.

The terrain that separates the high ground from the low ground on plaintiff's ranch is impassable by motor vehicle, and, consequently, plaintiff's predecessors have historically used two different routes to gain access to the separate parts of the ranch.[1] Butte Creek Road, which runs along the southern border of plaintiff's property, has been used to reach the river and the low ground. However, because of the steep, nearly vertical terrain all along the north side of Butte Creek Road, that road has never provided access to the high ground. Rather, plaintiff's predecessors got to the high ground from a road or trail that runs through parts of defendant's ranch. A paved public road ends at the eastern border of defendant's ranch. At that point, there is a gravel road that goes to defendant's ranch headquarters and residence. Eventually, it ceases being a gravel road and becomes nothing more than a pair of ruts that runs along the edge of several wheat fields and along a fence. At some points, it becomes even less than that; one witness testified that many parts of the trail were not visible and that people would just drive over the general vicinity. The trail ultimately ends on plaintiff's ranch near a cabin and corral that were built by one of plaintiff's predecessors. At two points, the trail leaves defendant's land, enters a portion of plaintiff's land, and then re-enters defendant's

---

[1] At trial, several witnesses testified that, because of the terrain, there is no place on plaintiff's property that would offer motor vehicles a passageway from the low ground to the high ground; indeed, the terrain is so severe that, in their opinion, a road providing such access could not be built.

land. Other than that, the trail is exclusively on defendant's property.

Over the years, plaintiff's predecessors have used the trail to transport cattle, as well as horses and sheep, in and out of the high ground, and to bring in supplies. At times, the owner of what is now plaintiff's land would lease out the grazing rights to the high ground, and the lessee would live in the cabin. One witness testified that, during the winter months from the 1930s through 1972, a tenant would graze sheep on the high ground and that a herder would live in the cabin during that time. The herder would move sheep in and out by way of the trail and would go to get groceries and supplies over the same route. One witness who grew up on plaintiff's ranch used the trail to get to a school bus stop. Although the frequency varied depending on the season or on what the high ground was being used for, from the 1950s on, plaintiff's predecessors' use was continuous and "obvious," according to a witness who lived on defendant's ranch through much of the 1950s and 1960s.[2]

It is not clear from the evidence how the trail was first created. Plaintiff suggests that at least the portion of the trail beyond defendant's residence was created to gain access to the grazing areas on the high ground and the cabin and corral.[3] Defendant suggests that it is equally possible that the trail was built to gain access to the wheat fields on defendant's property. In any event, the evidence does not offer a clear answer, nor is it clear the extent to which defendant and its predecessors used the entire way; that is, other than the part of the gravel road that goes to defendant's ranch and residence, the testimony varies as to whether defendant's predecessors used the western parts of the trail as it ran

[2] Witnesses' recollections varied as to how often plaintiff's predecessors used the trail. One witness, who lived on plaintiff's ranch in the 1950s, recalls his father using the trail daily during certain seasons and about three or four times a month during other times. Another witness, who lived on defendant's ranch, recalls seeing trucks go by only a few times a year.

[3] Plaintiff points out that neighboring landowners have referred to the trail by the name of whoever owned plaintiff's ranch at the time; for example, it was called the "Beck Cabin Road" while the Becks owned and ranched the property. Similarly, before that, it was known as "Paul Jaeger's Road," after the person who owned plaintiff's property.

alongside the wheat fields and the fence lines. Some witnesses who lived or worked on defendant's ranch recall using the road to farm the wheatfields; others recall not needing to use the road and only driving combines or other vehicles through the fields.

There was no evidence that the owners of the parcels operated under any agreement for plaintiff's predecessors to use the road. None of the witnesses who worked on plaintiff's ranch ever recalled asking for permission to use the road; those who lived there testified that they considered it their "right" to use the road. Although there is nothing to suggest that, until the events that gave rise to this litigation, defendant's predecessors ever tried to stop plaintiff's predecessors from using the trail, it appears that plaintiff's predecessors' use of the trail interfered with defendant's predecessors' use of their land at times. During the 1950s, when the Becks owned plaintiff's ranch, defendant's predecessors plowed over parts of the trail and tried to grow wheat on those parts of the land. That made it difficult for Beck to use parts of the trail to reach the high ground, but he continued to use the trail and, in certain places where the trail was especially rough, he drove around it and through defendant's wheat field. Beck's son recalls his father "cussing out" the tenant of defendant's ranch and demanding that he stop interfering with his access route.

Shortly after the parties purchased the ranches, a dispute arose as to whether they could continue traveling over each other's property, and defendant began locking gates along the trail to prevent access to plaintiff's high ground. Plaintiff brought this action to establish a prescriptive easement or, in the alternative, a statutory way of necessity under ORS 376.150 *et seq.* across defendant's property. At trial, several witnesses testified about the use of the trail over the years and about the two ranches in general. The trial court issued a written opinion that included the court's factual findings. In particular, the court found:

"8. The trip between [plaintiff's] low land and the high land is short and extremely steep, with much of the vertical distance consisting of rim rock, sitting perpendicular to the ground below.

"9. A road suitable for vehicular travel can not be built between the low land and the high land.

"10. The high land is accessible by vehicle over what is now known as Buckhorn Road.

"* * * * *

"15. Plaintiff and its predecessors in interest have used Buckhorn Road to access the high land for over sixty years."

As to plaintiff's prescriptive easement claim, the court determined that plaintiff's and plaintiff's predecessors' use of the trail was permissive and accordingly entered judgment against plaintiff on that claim. However, the court entered judgment in plaintiff's favor on the statutory way-of-necessity claim. *See* ORS 376.150 *et seq.* The trial court reasoned that, among other things, plaintiff does not have an existing easement or enforceable access to a public road that would provide access to the ranch's high ground.

Defendant appeals, arguing that, because Butte Creek Road provides plaintiff access to and from the ranch, the trial court erred in granting plaintiff a way of necessity over its property. Plaintiff responds that the trial court was correct in analyzing the low and high ground as distinct pieces of property and in concluding that the trail represented the only feasible means of access to the high ground. Plaintiff also cross-appeals, arguing that the trial court erred in denying its claim for a prescriptive easement and for damages from interfering with its easement, in denying its punitive damages claim, and in calculating the amount of attorney fees awarded to defendant.

■ Because one of the conditions for granting a statutory way of necessity is that the plaintiff is unable to obtain an easement to gain access to the property, *see* ORS 376.180(9), we begin with plaintiff's cross-appeal. We review *de novo* plaintiff's request for a declaration that it is entitled to a prescriptive easement. *See Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999) (declaratory judgment proceedings can be legal or equitable depending on the nature of the claim and the relief sought). In order to establish a prescriptive easement, the claimant must demonstrate open, notorious, and adverse use of the

way that is continuous for a period of ten years. *Thompson v. Scott*, 270 Or 542, 546, 528 P2d 509 (1974). The way need not be used daily; rather, "[i]t is necessary only to show that the claimant made such reasonable use of the way as his needs required." *Feldman et ux. v. Knapp et ux.*, 196 Or 453, 473, 250 P2d 92 (1952); *see also Kondor v. Prose*, 50 Or App 55, 59, 622 P2d 741 (1981) (continuous use "requires only that the alleged easement be used in a manner consistent with the needs of the user"); *Beebe v. DeMarco*, 157 Or App 176, 180, 968 P2d 396 (1998) (same).

When the claimant has established open and continuous use for a period of ten years, a presumption arises that the use is made under a claim of right. *See generally Feldman*, 196 Or at 470-71. In *Feldman*, the court followed the "prevailing rule" that, when the claimant shows that "a servitude has been enjoyed during the period required for prescription, openly, continuously and uninterruptedly, a presumption arises * * * that the user was adverse[.]" *Id.* at 472; *see Hoffman v. Freeman Land and Timber, LLC.*, 329 Or 554, 562-63, 994 P2d 106 (1999) (reaffirming the application of that presumption in prescriptive easement cases). In such cases, "the burden of proof [is] upon [the] defendants to rebut the same[.]" *Feldman*, 196 Or at 472. The defendant can do this by showing that the use was permissive, but "[e]vidence of mere acquiescence in, as distinguished from permission for, such use on the part of the owners of the servient estate is insufficient for that purpose." *Id.* Likewise, evidence of "friendship [or] close social relations" between the claimant and the owner will not rebut the presumption of adverseness. *Id.* Nor will the fact that the servient landowner also used the way during the prescriptive period. *Id.* at 474.

In *Woods v. Hart*, 254 Or 434, 437, 458 P2d 945 (1969), the court explained that "the fact that the claimant's use is of an existing way and the use does not interfere with the owner's use is, in our opinion, enough to rebut the presumption of adverseness." The court explained the basis for its holding: "Where one uses an existing way over another person's land and nothing more is shown, it is more reasonable to assume that the use was pursuant to a friendly arrangement between neighbors rather than to assume that the user was making an adverse claim." *Id.* at 436. The court

thus inferred permission in those specific circumstances. Following *Woods*, this court has continued to hold that, although open and notorious use for ten years is presumptively adverse, the presumption may be rebutted by proving that the claimant was merely using an existing road that did not interfere with the defendant's use or by proving that the use was permissive in some other way. *Beebe*, 157 Or App at 180-81; *Arana v. Perlenfein*, 156 Or App 15, 20-21, 964 P2d 1125 (1998); *House v. Hager*, 130 Or App 646, 651, 883 P2d 261, *rev den* 320 Or 492 (1994).

■      In this case, we have no trouble agreeing with the trial court's conclusion that plaintiff and its predecessors used the way openly and continuously for well over ten years.[4] That leaves the question whether the use was adverse. Defendant argues that, in effect, the court has created a presumption that the use of an existing road establishes that the use is permissive. The court did not write that broadly in *Woods*. Rather, the court recognized that a presumption of adversity arises from open and continuous use but that that presumption may be rebutted when the plaintiff uses an existing way over a neighbor's land that does not interfere with the neighbor's use. *Woods*, 254 Or at 436-37; *see Arana*, 156 Or App at 20 (recognizing that *Woods* did not create a presumption of permissiveness). The court was also careful to explain in *Woods* that its holding turned on the fact that "nothing more [wa]s shown" than the use of an existing road that did not interfere with the servient tenant's rights. 254 Or at 436.

■      With those principles in mind, we turn to the question whether defendant has rebutted the presumption of adverse use. Defendant relies heavily on the fact that the parties were unable to establish who built the road, from which we are to infer that it was built by and for the benefit of the servient landowner. At the outset, we question how much that factor advances defendant's position. This is not a case where a road has been paved or even clearly established

---

[4] Defendant argues that the evidence does not establish continuous use. We disagree. There is ample evidence to support the inference that plaintiff and plaintiff's predecessors used the road continuously in a manner that was consistent with their particular uses of the ranch.

as a road through the servient landowner's property. Many parts of the "road" are not a road at all, and one would be hard pressed to say that anyone constructed anything. As noted above, after the first few hundred yards, the "road" is nothing more than two ruts running along a wheat field or a fence line, and, according to one witness, parts of it are not even visible during certain periods of time. In that sense, plaintiff and its predecessors have been just driving over part of defendant's land for the better part of the last century, not necessarily because it had been clearly carved out of the land or constructed by someone before them but because it was the easiest way to get to their own property.

More importantly, establishing that plaintiff did not construct the road does not, standing alone, rebut the presumption of adversity; that is, defendant must also show that plaintiff's use did not interfere with defendant's use of the servient land or that plaintiff's use was permissive. *Beebe*, 157 Or App at 180-81; *House*, 130 Or App at 651; *cf. Woods*, 254 Or at 437 (looking at whether the claimant had interfered with the owner's use in determining whether presumption had been rebutted). Defendant argues that there has been no interference with its use of its land. However, as mentioned, after defendant's predecessors plowed over the trail and attempted to grow wheat on that strip of land, plaintiff's predecessors kept on driving over it and using it as a means of access to their property. Using the land in such an inconsistent manner, in our view, constitutes interference with the owner's use and supports the inference that the use is under a claim of right and not subordinate to the owner's rights to the land.

Further supporting the inference that the use was adverse and more than a mere friendly or neighborly arrangement is that, during at least two points in history, the evidence indicates that the occupants of the two ranches did not get along. As noted, during one such point, a former owner of plaintiff's ranch "cussed out" and demanded that a tenant of defendant's land stop interfering with the access route by plowing it over. This is consistent with the testimony of several of the previous owners and occupants of plaintiff's ranch that they believed they had a right to use the land. Given the evidence in this record, we find on *de novo* review

that the presumption of adverseness has not been rebutted. It follows that plaintiff proved by clear and convincing evidence that it was entitled to a declaration establishing that it has a prescriptive easement over defendant's property. It also follows that, because plaintiff is entitled to a prescriptive easement, plaintiff is not also entitled to a statutory way of necessity. *See* ORS 376.180(9).

■ Plaintiff raises a second, separate argument. It contends that the court erred in not awarding it damages for defendant's interference with its use of the prescriptive easement. Defendant argues that plaintiff can obtain damages, if at all, by way of a petition for supplemental relief under ORS 28.080. Plaintiff replies that defendant misperceives the nature of its damages claim. According to plaintiff, it did not request damages to supplement or effectuate a declaration that it possesses a prescriptive easement over defendant's land. Rather, it was seeking damages separately for interference with its interest in land.

Before addressing this issue, it is helpful to explain the procedural posture in which it arises. Plaintiff's fourth amended complaint contains three claims for relief.[5] Only the first claim for relief is at issue here. That claim contains two counts. The first count seeks a declaration that plaintiff has a prescriptive easement over defendant's property. The second count seeks damages for interfering with plaintiff's use of its easement. The trial court did not decide whether plaintiff was entitled to damages because it found that plaintiff had no easement.

Part of the dispute on appeal arises from the way that plaintiff pled its complaint. Although plaintiff pled its damages claim as the second count of its first claim for relief, plaintiff's first and second counts are not "alternative theories of recovery" within the same claim for relief. *See* ORCP 16 B (describing the relationship between claims and counts);

---

[5] Plaintiff's first claim for relief contains two counts. The first count seeks a declaration that plaintiff has a prescriptive easement over defendant's property. The second count seeks damages for interfering with that easement. The second claim for relief alleges that defendant trespassed on plaintiff's easement and seeks damages for the trespass. The third claim for relief seeks a statutory way of necessity.

*Erwin v. Oregon State Bar*, 149 Or App 99, 101 n 1, 941 P2d 1094 (1997) (same). Rather, plaintiff's claim for damages for interfering with its easement is separate from its claim for a declaration that it has a prescriptive easement over defendant's property. *See Foster Auto Parts, Inc. v. City of Portland*, 171 Or App 278, 280-81, 15 P3d 573 (2000); *Nice v. Priday*, 137 Or App 620, 622, 905 P2d 252 (1995). Had plaintiff pled the two counts as two claims for relief, there would be no question that the damages claim is separate from the declaratory judgment claim. However, any error in pleading did not prejudice defendant's substantial rights. *See* ORCP 12 B. This is not a case in which plaintiff failed to allege any claim for damages. *Cf. Mulier v. Johnson*, 332 Or 344, 350-51, 29 P3d 1104 (2001) (holding that ORCP 12 B cannot excuse the complete failure to allege a request for attorney fees in either a pleading or a motion). Rather, this is a case in which plaintiff's complaint put defendant on notice, albeit imperfectly, that it was seeking damages for interfering with its prescriptive easement.[6]

As noted above, the trial court did not reach the question whether plaintiff was entitled to any damages for defendant's alleged interference with plaintiff's use of its prescriptive easement. That damages claim is legal rather than equitable. We accordingly remand that claim to the trial court to allow it to decide whether plaintiff is entitled to any damages for defendant's alleged interference with its prescriptive easement.

■     Plaintiff raises two additional assignments of error on cross-appeal. Plaintiff argues that the trial court erred in granting partial summary judgment on its punitive damages claim. Defendants moved for partial summary judgment on two issues. They sought to dismiss Charles Kunde as a defendant. They also moved for partial summary judgment on plaintiff's punitive damages claim. According to an affidavit submitted in support of defendant's motion, the acts that allegedly warranted punitive damages occurred before plaintiff bought its land.

---

[6] Given plaintiff's characterization of its complaint, and our resolution of that issue, we express no opinion on the question whether plaintiff could also seek supplemental relief under ORS 28.080.

Plaintiff opposed the first part of the motion that sought to dismiss Kunde as a defendant, but it did not oppose the second part of the motion that sought partial summary judgment on its punitive damages claim. After the trial court granted partial summary judgment on punitive damages, plaintiff filed a motion for reconsideration in which it raised arguments that it could have raised as part of its initial opposition to the motion. The trial court denied the motion for reconsideration.

Because plaintiff did not oppose defendant's motion for partial summary judgment on its punitive damages claim, the only possible objection that it preserved was to the ruling denying its motion for reconsideration. *See Miller v. Salem Merchant Patrol*, 165 Or App 266, 272-73, 995 P2d 1206 (2000). The status of "motions for reconsideration" is not completely clear. *See Carter v. U.S. National Bank*, 304 Or 538, 546, 747 P2d 980 (1987) (Peterson, C. J., concurring) (noting that "[t]he so-called 'motion for reconsideration' appears neither in the Oregon Rules of Civil Procedure nor in any other Oregon statute"). But even if the motion for reconsideration were proper, a procedural problem arises when the trial court denies the motion. If plaintiff may appeal the denial of its motion for reconsideration on a ground that could have been raised in opposition to the original motion for partial summary judgment, then it will have circumvented the obligation to file a timely response to the original motion. In comparable circumstances, the Supreme Court has declined to review the denial of a motion for new trial when the motion is based on grounds that could have been raised before the verdict was returned. *Clarizo v. Spada Distributing Co., Inc.,* 231 Or 516, 520-21, 373 P2d 689 (1962). We follow the same course here.

In its third assignment of error, plaintiff does not dispute that defendant is entitled to recover the attorney fees that it reasonably expended in response to plaintiff's statutory way-of-necessity claim. *See* ORS 376.175(2)(e). Rather, plaintiff argues that the trial court erred in apportioning the time that defendant's attorneys spent on plaintiff's prescriptive easement claim and on its way-of-necessity claim. We review the trial court's decision apportioning fees between a fee-generating claim and a non-fee-generating claim for abuse of discretion. *See Kidney Association of Oregon v.*

*Ferguson*, 315 Or 135, 140-41 n 9, 843 P2d 442 (1992) (reviewing the amount of attorney fees allowed in a probate case for abuse of discretion). Having reviewed the parties' submissions to the trial court and the court's ruling, we find no abuse of discretion. We accordingly affirm the trial court's fee award.

On appeal, reversed; on cross-appeal, reversed and remanded with instructions to enter a judgment declaring that plaintiff has a prescriptive easement across defendant's property, reversed and remanded as to plaintiff's damages claim for interfering with its prescriptive easement, and otherwise affirmed.