Argued and submitted May 24, reversed and remanded October 13, 2004

Richard F. MARTIN
and Marie M. Martin,
husband and wife,
*Respondents,*

*v.*

G. B. ENTERPRISES, LLC,
an Oregon limited liability company,
*Appellant.*

01-0203-E-2; A120991

98 P3d 1168

Kenneth M. Tharp argued the cause for appellant. On the brief were Thomas F. Armosino and Frohnmayer, Deatherage, Pratt, Jamieson, Clarke & Moore, P.C.

Steven P. Pickens argued the cause and filed the brief for respondents.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant, G. B. Enterprises (GB), appeals a judgment granting plaintiffs, Richard and Marie Martin (the Martins), a prescriptive easement over defendant's property. We review *de novo*, ORS 19.415(3) (2001);[1] *House v. Hager*, 130 Or App 646, 649, 883 P2d 261, *rev den*, 320 Or 492 (1994), and reverse.

GB owns flagpole-shaped real property (Tax Lot 1600) with the pole-shaped portion acting as a driveway for ingress and egress to the highway.[2] The Martins own the neighboring property. The northern edge of the Martins' property (Tax Lot 1700) abuts the driveway of Tax Lot 1600, with the eastern edge bordering South Pacific Highway and the western edge bordering GB's property. *See* Appendix A.

The Martins own a Harley-Davidson motorcycle dealership and their customers use the driveway of Tax Lot 1600 for ingress and egress because it is more convenient than the other entrance on the eastern edge of Tax Lot 1700 bordering South Pacific Highway. Tax Lot 1600 and Tax Lot 1700 were originally one parcel of land that was subsequently divided. Tax Lot 1600 was originally purchased by Wilford and Bessie Turton (the Turtons) in 1963, and Tax Lot 1700 was originally purchased by Walker the Weeper, Inc. (Walker) in 1964. The Turtons used Tax Lot 1600 as a mobile home park, and Walker used Tax Lot 1700 to sell and service mobile homes. Because many of the Turtons' residents utilized Walker's services, both parties agreed that Walker's customers could use the driveway of Tax Lot 1600 for ingress and egress.

Although the exact dates are unclear, sometime between 1975 and 1979 a dispute arose over the use of the driveway. The then-owners of Tax Lot 1600, Kenneth and Anne Garchow (the Garchows), blocked access to Tax Lot

---

[1] The 2003 legislature passed House Bill (HB) 2646, which amended ORS 19.415. Or Laws 2003, ch 576, § 88. However, because the judgment on appeal was entered before the effective date of HB 2646, those amendments do not apply here. Or Laws 2003, ch 576, § 90a.

[2] The parties use the term "flagpole shaped" to describe the property owned by GB. We adopt that terminology.

1700 over the driveway. Walker responded by strategically placing mobile homes on the northeastern edge of the property in order to block the view of the mobile home park residents trying to enter the highway. The dispute lasted about a week, until the Garchows agreed to remove the barrier and allow access over the driveway again, and Walker agreed to remove the mobile homes.

GB purchased Tax Lot 1600 in 1994 and continued to use it as a mobile home park. The Martins purchased Tax Lot 1700 sometime after 1995 and opened a Harley-Davidson motorcycle dealership. The mobile home park residents began complaining to GB about increased traffic cutting across the driveway. Addressing the residents' complaints, GB blocked access to Tax Lot 1700 across the driveway. As a result, the Martins brought this action against GB seeking to establish a prescriptive easement across GB's land. The trial court granted the Martins a prescriptive easement across GB's land, finding that there was no agreement between the parties' predecessors in interest, and, at best, there was mere acquiescence in allowing use of the driveway as opposed to outright permission.

GB raises two assignments of error: (1) The trial court erred in granting the Martins a prescriptive easement because the Martins' and their predecessors' (Walker/Martin) use of the driveway was pursuant to an agreement, and (2) alternatively, if the Martins had established a prescriptive easement, the trial court erred in not limiting the scope of the easement to its volume of use before the increase in traffic. The Martins assert that GB and their predecessors in interest (Turton/Garchow/GB) merely acquiesced in their use of the driveway and that the easement should not be limited in scope because the increased traffic is a "normal evolution" of its use.[3]

We begin with GB's first assignment of error. In order to establish a claim for a prescriptive easement, "a claimant must show, by clear and convincing evidence, an open and notorious use of land adverse to the rights of the

---

[3] Because much of the Martins' and GB's arguments depend on the actions of their predecessors in interest, we will refer to them as Walker/Martin and Turton/Garchow/GB when their collective use of the claimed easement is at issue.

servient owner for a continuous period of 10 years." *Petersen v. Crook County*, 172 Or App 44, 49, 17 P3d 563 (2001). "A use that is shown to be open and continuous for a 10-year period is presumptively adverse." *House*, 130 Or App at 651. To satisfy the requirement that the use be for a 10-year period, the use of the current owner's predecessors in interest may be tacked onto the current owner's use. *Faulconer v. Williams*, 327 Or 381, 393, 964 P2d 246 (1998). However, a presumption of adverse use may be rebutted by evidence that the use was permissive. *House*, 130 Or App at 651.

■　　The evidence is undisputed that Walker/Martin's open and continuous use of the driveway satisfies the requirement that the use be for a 10-year period and triggers the presumption that the use is adverse. However, the evidence is also undisputed that there was an agreement by Walker/Martin and Turton/Garchow/GB permitting the use of the driveway for ingress and egress into Tax Lot 1700.[4] Evidence of an express agreement is sufficient to rebut the presumption of adverse use arising from Walker/Martin's open and continuous use of the driveway. Because Walker/Martin's use of the driveway was permissive from the outset, it is presumed that the use continued to be permissive unless the Martins can show the use became adverse and that Turton/Garchow/GB had knowledge of the adverse use. *See Thompson v. Scott*, 270 Or 542, 549, 528 P2d 509 (1974). Therefore, it was the Martins' burden to prove that Walker/Martin's use of the driveway after the agreement was of a "new and different character" establishing that their new use was adverse and that Turton/Garchow/GB had knowledge of it. *Id.*

■　　The Martins argue that a week of hostile relations between former owners the Garchows and Walker was sufficient to make the use of the driveway adverse and that the use has been adverse since then. However, the facts do not establish a "new and different character of the continued use." *See id.* To the contrary, after the dispute was resolved,

---

[4] The Martins stipulated in their trial memorandum that "the evidence will be that Tax Lot 1600 and Tax Lot 1700 owners agreed that the roadway would be utilized for the mutual benefit and interests of the parties."

Walker's continued use "was essentially of the same character as the use" before the dispute; customers still used the driveway for ingress and egress. *See id.* at 550. In addition, Walker's use of the driveway continued only after both parties agreed that Walker would remove the mobile homes blocking the view of the highway and that the Garchows would remove the barrier and allow use of the driveway again. Continued use pursuant to an agreement does not create an adverse use. "A prescriptive easement can never ripen out of mere permissive use no matter how long exercised." *Baum et ux v. Denn et al*, 187 Or 401, 406, 211 P2d 478 (1949).

We hold that Walker/Martins' use of Tax Lot 1600 for ingress and egress was permissive because that use was pursuant to an express agreement. Therefore, the trial court erred in granting the Martins a prescriptive easement over GB's land.

Because we hold that the Martins have not established a prescriptive easement, we need not address GB's second assignment of error.

Reversed and remanded.