Argued and submitted May 24, 2005, reversed and remanded for entry of judgment
for defendants May 10, 2006

## Ellis Dee SKIDMORE,
### Elaine N. Skidmore, Eleta Dawn Skidmore,
### Eric D. Skidmore, and Ember Ann Skidmore,
*Respondents,*

*v.*

## Gordon CLARK
## and Niki Jo Clark,
*Appellants.*

## 01-CV-0026; A123598

135 P3d 367

Thomas W. Sondag argued the cause and filed the briefs for appellants. With him on the briefs were Sumner & Silvertooth, Paul F. Sumner, and Lane Powell Spears Lubersky LLP.

Steven D. Bryant argued the cause and filed the brief for respondent. With him on the brief was Bryant, Emerson & Fitch, LLP.

Before Wollheim, Presiding Judge, and Haselton and Schuman,* Judges.

WOLLHEIM, P. J.

---

* Schuman, J., *vice* Richardson, S. J.

**WOLLHEIM, J.**

Defendants, the Clarks, appeal from a judgment of the trial court granting plaintiffs, the Skidmores, a prescriptive easement to roadways over the Clarks' property. The Clarks assign error to the trial court's determination that the Skidmores' use of the roadways was adverse. On *de novo* review, *Montagne v. Elliot*, 193 Or App 639, 649, 92 P3d 731 (2004), we reverse.

The Skidmores and the Clarks are neighboring landowners of large rural properties in Jefferson County. The Clarks are the owners of Hay Creek Ranch, and the Skidmores are the owners of Parsley Homestead. Parsley Homestead lies within the boundaries of Hay Creek Ranch, and the Skidmores and their predecessors in interest have used the roadways in question, Dewies Canyon Road and Antone Road, to access Parsley Homestead since at least the 1950s. The roads are dirt roads with a number of locked gates restricting access to the roads and to the pastures and properties off the roads. The parties stipulated that it was unknown who had built the roads.

Parsley Homestead was originally purchased by Gus DeLude, who has since died. DeLude's son, Kenneth Buck, Sr., testified that he first visited Parsley Homestead in 1952 and used the roads without permission from Hay Creek Ranch and that, when the gate to Antone Road was locked, he would go to Hay Creek Ranch to get a key. Buck, Sr.'s son, Kenneth Buck, Jr., also testified that he had been using the roads to access Parsley Homestead without permission since the 1960s. Fannie Regnier, the Skidmores' immediate predecessor in interest, was married to DeLude and came into possession of Parsley Homestead around 1975. Regnier testified that she always used the road without permission from the then-owners of Hay Creek Ranch, and that she had her own lock on the gate to Antone Road and her own key to the lock. Regnier sold Parsley Homestead to the Skidmores in 1990.

Bill Waddle, the Clarks' immediate predecessor in interest, purchased Hay Creek Ranch in 1986. Waddle testified that one of his first tasks as owner of Hay Creek Ranch

was to remove the old chain on the Antone Road access gate, which had several unknown locks, and replace it with a new chain and his own lock. After installing the new chain and lock, Waddle allowed other property owners to install their own locks on the chain. Specifically, Waddle testified that the Skidmores told him that they "had some property back in there and [ ] would like to be able to use that road to get back into [their] property and I said 'Well fine' and I let [them] put [their] lock on my chain." Waddle never denied anyone permission to use the roads. The Clarks acquired the Hay Creek Ranch property in 1993.

Ever since the Clarks and the Skidmores have been neighboring property owners, their relations have been friendly. Scott McManus, who managed Hay Creek Ranch for the Clarks, became very close friends with the Skidmores. The Clarks allowed the Skidmores to stock one of the reservoirs on Hay Creek Ranch with trout, and even granted the Skidmores a hunting lease on the Hay Creek Ranch property. The Clarks also built and paid for a fence between the two properties and used the Skidmores' "D-7 Cat" to grade out the land. The parties signed an agreement acknowledging that some fences may not conform to the property lines, and that they would not make any claim to each others' property. The Skidmores picked up and delivered the Clarks' mail for them. In addition, the Skidmores performed some maintenance operations on the road. The Skidmores also allowed a high school forestry class to use the road to gain access to Parsley Homestead. The Clarks never denied the Skidmores access to the road except once, in 1995, when the Clarks refused to allow the Skidmores to run cattle on the road because of the potential for damage to the road. At trial, plaintiff Ellis Skidmore testified that, despite allegations by the Clarks that the Skidmores occasionally damaged the road, they "never damaged any roads on Hay Creek."

Around 2001, the Clarks noticed some "deep tire ruts" in the road and that the chain on one of the Antone Road gates had been cut and a second lock had been placed on the chain. When the Clarks confronted the Skidmores about the situation, the Skidmores told the Clarks that they "had a legal right-of-way to go to [ ] the Parsley property[.]" The

Clarks responded by letter, attempting to explain the relationship between the parties. In that letter, the Clarks stated that they "continue to grant [the Skidmores] permission to freely enter and cross Hay Creek property[.]" The Skidmores responded with a letter asserting that the "access rights for [their] property were established long before [the Clarks] acquired the Hay Creek Ranch property." The Skidmores also requested that the Clarks agree to record an easement for the use of the roads. The Clarks refused, and the Skidmores filed this action.

In a letter opinion, the trial court first found by clear and convincing evidence that the Skidmores' use of the roads had been open and notorious for the requisite ten-year period, raising the presumption of adverse use. Next, the trial court examined whether the Clarks overcame the presumption by showing that the Skidmores' use was of an existing road and that the Skidmores' use did not interfere with the Clarks' use. The court stated,

> "As noted above the 'roadway' is an existing route used by both parties and their representatives. But does the record in the case at bar demonstrate something '. . . more was shown . . .' that would be an interfering use? Previously, the court found there was no significant evidence of who built the 'roads.' Rather the routes were developed and became compacted by decades of use which commenced when the area was first homesteaded. As in [*R & C Ranch, LLC v. Kunde*, 177 Or App 304, 33 P3d 1011 (2001), *adh'd to on recons*, 180 Or App 314, 44 P3d 607 (2002)] the fact that the road was not constructed by Plaintiff[s] does not, standing alone, rebut the presumption of adversity. The record demonstrates Ms. Regnier had and used her own lock to enter the Antone Gate and access her property since 1975. *The record demonstrates that Ellis Skidmore, repeatedly entered the roadway to trim back trees and bushes to keep the road open. He used a diesel cat to maintain a portion of the Dewies Canyon branch. He cut the chain placed on the Antone Gate when [Gordon Clark], intending to limit access to the [the Clarks'] property, placed his own lock on the gate chain. Mr. Skidmore restored his lock upon the gate. Mr. Skidmore granted access to high school forestry classes and permitted the class to traverse the routes to work on his property. Each of these actions is an act that is beyond that of a non-interfering act of a friendly neighbor. The uses were*

*adverse and [the Clarks] have failed to rebut the presumption."*

(Emphasis added.) The trial court entered judgment accordingly, and the Clarks appeal.

██       We review *de novo* whether the Skidmores have established a claim for a prescriptive easement by clear and convincing evidence. *Webb v. Clodfelter*, 205 Or App 20, 23, 132 P3d 50 (2006). To establish a prescriptive easement, the Skidmores must demonstrate that their use of the road has been open, continuous, and adverse for a period of 10 years. *Id.* at 26. Their use is presumed to have been adverse if it was open and continuous for a 10-year period. *Id.* We agree with the trial court's finding that the Skidmores' use has been open and continuous for the requisite 10-year period and that the Skidmores are entitled to the presumption of adverse use.

██       However, the Clarks can rebut the presumption of adverse use by demonstrating that the Skidmores' use was of an "existing way" and that the use did not "interfere" with the Clarks' use of the roads. *Id.* at 27. Here, the parties stipulated that it was unknown who built the road. The question thus becomes whether the Skidmores' use of the roads interfered with the Clarks' use.[1]

We conclude that there is no evidence in the record showing that the Skidmores' use of the roads interfered with the Clarks' use for the requisite time period. In support of its conclusion that the Skidmores' use of the roads was adverse, the trial court pointed to the Skidmores' maintenance of the roads, the Skidmores' allowance of a high school forestry class to use the roads for access, and the Skidmores' cutting of the Clarks' chain. We discuss the insufficiency of those factors in turn.

---

[1] In *Webb*, we recognized that some of our case law has gone "so far as to state that, if the road on the servient property is of unknown origin and is commonly used by all parties, there simply is no presumption of adverseness in the first place." 205 Or App at 27-28. As in *Webb*, it does not matter whether we apply the presumption of adverse use or not because, either way, the record is devoid of evidence of adverse use for the requisite time period.

We begin with the Skidmores' maintenance of the roads. Oregon courts have consistently held that maintenance is more indicative of a friendly agreement than it is of adversity. *Woods v. Hart*, 254 Or 434, 436, 458 P2d 945 (1969); *Hayward v. Ellsworth*, 140 Or App 492, 498, 915 P2d 483 (1996); *House v. Hager*, 130 Or App 646, 655, 833 P2d 261, *rev den*, 320 Or 492 (1994). Plaintiff Ellis Skidmore did testify that, on one occasion while performing maintenance on Antone Road, employees of Hay Creek Ranch had to wait until he finished gathering up tree branches before they could get by. However, one brief isolated incident at an unspecified date is insufficient to constitute the type of interference contemplated by our case law.

The trial court also cited the fact that the Skidmores had allowed a high school forestry class to use the roads. However, neither the trial court nor the Skidmores explain how that interfered with the Clarks' use of the roads. There is no evidence that the class caused any damage to the roads or prevented the use of the roads for any appreciable amount of time. *See, e.g.*, *Webb*, 205 Or App at 28-29 (use of the road by a hunting club was insufficient to prove adverse use in the absence of any hostile encounters between club members and the servient estate owners).

As far as the Skidmores' cutting of the Clarks' chain is concerned, even if such an act constitutes interference with the Clarks' use, that act did not occur until 2001. Thus, the Skidmores' claim for a prescriptive easement, if based on that act, would not ripen until some time in 2011, a date far removed from this case.

The remaining evidence in this case weighs in the Clarks' favor and rebuts the presumption of adverse use. Although the evidence shows that the Clarks believed that the Skidmores caused damage to the roads, an act that weighs in favor of adverse use, plaintiff Ellis Skidmore specifically testified that he "never damaged any roads on Hay Creek." In addition, although the evidence shows that no express permission was given to use the roads, on multiple occasions, the Skidmores and their predecessors in interest asked Hay Creek Ranch for the lock combination or a key to the Antone Road gate, an act that is more permissive than

adverse. In fact, on one occasion, defendant Gordon Clark specifically denied plaintiff Ellis Skidmore permission to use the roads to run cattle because of the damage it would cause.

The neighborly relationship between the Skidmores and the Clarks is also significant. The Clarks granted the Skidmores a hunting lease and allowed the Skidmores to stock a reservoir on Hay Creek Ranch with fish, and, in return, plaintiff Ellis Skidmore delivered the Clarks' mail and allowed the Clarks to borrow equipment to help build a mutual fence. That relationship weighs in favor of the Skidmores' use of the road being pursuant to a neighborly arrangement rather than an act of adverse use. Lastly, the record shows that landowners other than the Skidmores used the roads, a factor that also weighs in favor of permissiveness. *Nice v. Priday*, 137 Or App 620, 625, 905 P2d 252 (1995), *rev den*, 322 Or 644 (1996).

In sum, we conclude that the record contains no evidence of adverse use for the requisite time period. Accordingly, the trial court erred in granting the Skidmores a prescriptive easement.

Reversed and remanded for entry of judgment for defendants.