Argued and submitted September 10, 2008, affirmed on appeal; on cross-appeal, reversed and remanded for modification of judgment so as to permit PacifiCorp's upgrade of electrical transmission lines and to permit vehicular access to easement over plaintiffs' driveway in event of an emergency, with proviso that PacifiCorp shall pay costs to repair any damage caused by its vehicles September 9, 2009

James Cliff MOTES
and Barbara Motes, husband and wife,
individually and as trustees of
the James Cliff Motes and Barbara Motes
Joint Living Trust, dated 12/31/2004,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

PACIFICORP,
an Oregon corporation,
*Defendant-Respondent*
*Cross-Appellant,*

*and*

FARLEIGH WADA & WITT PC,
an Oregon professional corporation;
Kimberly Hanks McGair;
and Teresa Burch,
acting by and through PacifiCorp,
*Defendants-Respondents.*

Jackson County Circuit Court
051709Z2; A135699

217 P3d 1072

Brad C. Stanford argued the cause for respondent-cross-appellant and respondent Teresa Burch. With him on the briefs were Kimberley Hanks McGair and Farleigh Witt.

Mark R. Weaver argued the cause for respondents Farleigh Wada & Witt, PC, and Kimberley H. McGair. With him on the brief were David Paradis and Brophy, Mills, Schmor, Gerking, Brophy & Paradis, LLP.

Before Landau, Presiding Judge, and Schuman, Judge, and Ortega, Judge.

ORTEGA, J.

### ORTEGA, J.

This is a dispute over electrical transmission lines that cross plaintiffs' property. Plaintiffs appeal from a judgment for PacifiCorp after the trial court determined on cross-motions for summary judgment that PacifiCorp has a prescriptive easement for the lines and their maintenance, and dismissed plaintiffs' claims for trespass, ejectment, inverse condemnation, and an injunction. PacifiCorp cross-appeals, assigning error to the trial court's ruling prohibiting an upgrade of the lines and restricting PacifiCorp's access for maintenance and upgrades. We affirm on the appeal and reverse on the cross-appeal.

Plaintiffs bought an undeveloped lot in Jackson County with the intention of building a home on it. The lot has long had an irrigation ditch running through it. Before they purchased it, plaintiff Cliff Motes walked the subject property. From a nearby road, he saw the power lines; however, because of dense brush, he could not tell whether the lines actually crossed the property or were adjacent to it. A title report did not reveal easements for power lines, so plaintiffs assumed that the lines did not cross the subject property.

Sometime after the purchase, while clearing trees and brush in preparation for development, plaintiffs discovered that the lines in fact cross the subject property 38 feet above the ground and approximately eight to 10 feet inside the western boundary. They consist of high-voltage electrical transmission lines and cable and telephone lines that run parallel to and underneath the electrical transmission lines. The actual poles are to the north and south of the subject property. Neither PacifiCorp, which owns the transmission lines, nor its predecessors ever sought permission of the owners of the subject property to construct the lines or to enter onto the subject property to maintain them or to prune vegetation.

Plaintiffs determined that the lines interfered with their intended home site. They advised PacifiCorp of their intention to build a home within one foot of the lines and demanded that PacifiCorp remove or relocate them. Cliff Motes warned PacifiCorp's employee that if the lines were

not removed, he would shoot them down.[1] PacifiCorp then initiated litigation to enjoin plaintiffs from damaging the lines and to establish a prescriptive easement over plaintiffs' property. Before plaintiffs had appeared in the proceeding, PacifiCorp voluntarily dismissed its complaint without prejudice. Plaintiffs then brought this action, seeking damages for trespass and inverse condemnation, and seeking to eject PacifiCorp and to require it to remove the lines. Plaintiffs' complaint also included a claim for wrongful initiation of civil proceedings against all defendants (which included PacifiCorp's agent and its attorneys).

In its answer, PacifiCorp sought an injunction to prevent plaintiffs from violating state and federal law concerning building restrictions and construction work around high-voltage power lines. *See* ORS 757.800(2); ORS 757.805; OAR 860-024-0010; OAR 437-002-0320(12). PacifiCorp also asserted as an affirmative defense and counterclaim that it has a prescriptive easement for the lines; for their inspection, maintenance, repair, upgrade, and replacement; and for the maintenance of vegetation, as necessary to prevent interference with the lines.

On cross-motions for summary judgment on PacifiCorp's prescriptive easement counterclaim, the trial court granted partial summary judgment to PacifiCorp, concluding that it had established a prescriptive easement for its lines and for the right to enter the subject property to maintain the lines and to prune surrounding vegetation. The trial court ruled, however, that genuine issues of material fact remained as to the scope of the easement, and the case went to trial on that issue. On defendants' motions for summary judgment, the court dismissed each of plaintiffs' claims, with the exception of the inverse condemnation claim.

After trial, the court dismissed plaintiffs' inverse condemnation claim and determined the scope of PacifiCorp's easement, restricting PacifiCorp from upgrading the lines

---

[1] Cliff Motes testified at trial that he is sometimes a "bit mouthy," but that he never intended to shoot down the lines and that the threat was made in jest. He testified, "I'm a good guy. I don't shoot down lines. I don't do bad things." Plaintiffs ultimately modified their home design and built it in compliance with all setback requirements.

and from using a driveway on the subject property to operate vehicles in its maintenance of the easement. Plaintiffs appeal, asserting that the trial court erred in granting PacifiCorp's motion for summary judgment on plaintiffs' claims, in denying plaintiffs' motion for summary judgment on PacifiCorp's prescriptive easement claim, and in entering judgment for defendants on plaintiffs' claims for wrongful initiation of civil proceedings and inverse condemnation. PacifiCorp cross-appeals, assigning error to the trial court's restrictions on the easement. We reject without discussion plaintiffs' third and fourth assignments of error, challenging the judgment in favor of defendants on the claims for wrongful initiation of civil proceedings and inverse condemnation, and write to address plaintiffs' other two assignments of error and defendants' cross-appeal.

Plaintiffs' first two assignments of error both relate to the trial court's summary judgment rulings on PacifiCorp's prescriptive easement counterclaim. As noted, the trial court denied plaintiffs' motion and granted PacifiCorp's motion in part, ruling that PacifiCorp has a prescriptive easement for the power lines and for ingress and egress for the purpose of maintaining the lines and trimming vegetation. On appeal, plaintiffs assert that the trial court erred in determining on summary judgment that PacifiCorp has a prescriptive easement, contending that the record on summary judgment did not establish that PacifiCorp was entitled to judgment as a matter of law, because it lacked evidence to satisfy each of the elements of a prescriptive easement. In reviewing the trial court's ruling, we view the evidence in the light most favorable to plaintiffs, ORCP 47 C; *Jones v. General Motors Corp.*, 325 Or 404, 413, 939 P2d 608 (1997), to determine whether there were genuine issues of material fact that precluded summary judgment on PacifiCorp's prescriptive easement counterclaim.

Easements by prescription are not favored in the law, *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976), and, consequently, must be shown by clear and convincing evidence. *Petersen v. Crook County*, 172 Or App 44, 49, 7 P3d 563 (2001). "Clear and convincing" evidence is evidence that establishes that the existence of the facts asserted is highly

probable. *Shields v. Villareal*, 177 Or App 687, 694, 33 P3d 1032 (2001).

██    A party seeking to establish a prescriptive easement must show open or notorious use of the property that is adverse to the rights of the owner for a continuous and uninterrupted period of 10 years. *Martin v. G. B. Enterprises, LLC*, 195 Or App 592, 595-96, 98 P3d 1168 (2004). The "continuous use" requirement is satisfied by evidence that the alleged use was consistent with the needs of the user during the prescriptive period. *Kondor v. Prose*, 50 Or App 55, 59, 622 P2d 741 (1981). The "open or notorious use" requirement serves the function of giving the owner of the servient estate ample notice to protect itself against the establishment of prescriptive rights, *Restatement (Third) of Property* § 2.17 comment h (2000), and is satisfied by evidence that the use was such that the owner had a reasonable opportunity to learn of its existence and nature. *Baylink v. Rees*, 159 Or App 310, 317, 977 P2d 1180 (1999) (citing *Thompson v. Schuh*, 286 Or 201, 211, 593 P2d 1138 (1979)). Open use for the prescriptive period gives rise to a rebuttable presumption of adverseness. *Feldman et ux. v. Knapp et ux.*, 196 Or 453, 472-73, 250 P2d 92 (1952).

██    Although Oregon appellate courts have had occasion to consider express easements for utilities, *see, e.g.*, *Bigelow v. Wiley Mt. Inc.*, 174 Or App 538, 26 P3d 162 (2001), we have not addressed prescriptive easements relating to power lines. Jurisdictions that have considered them analyze such prescriptive easements in much the same way as prescriptive easements generally, with some unique characteristics attributable to the nature of the use. A prescriptive easement to run power lines is understood to encompass the right to maintain the lines and the vegetation under and around them. *See, e.g.*, *Cunningham v. Otero County Electric Cooperative*, 114 NM 739, 743-44, 845 P2d 833, 837-38 (1992). Among the many jurisdictions that have considered power line easements, the majority of them hold that, if the claimant is entitled to an easement to run the lines, an easement on the ground for maintenance is considered to be incidental and necessary to it. *See generally* C. S. Patrenelis, Annotation, *Correlative Rights of Dominant and Servient*

*Owners in Right of Way for Electric Line*, 6 ALR 2d 205 (1949). That is consistent with Oregon's general rule that an easement holder has the right to do what is necessary to repair and maintain the easement. *Baumbach v. Poole*, 266 Or 154, 157 n 1, 511 P2d 1219 (1973) (quoting 2 Thompson, *Real Property* 703, § 428 (1961): "[T]he person entitled to an easement has a legal right to maintain the property embraced by the easement to the extent necessary to permit its use for the purpose of the easement."); *see also Firebaugh v. Boring*, 288 Or 607, 611 n 2, 607 P2d 155 (1980) ("A right acquired by prescription is as good as one acquired by deed or grant[.]" (citing 2 G. Thompson, *Real Property* 290, § 349 (1961); 3 R. Powell, *The Law of Real Property* 34-251, § 423 (1979))).

■ We begin by considering whether PacifiCorp acquired a prescriptive easement for the power lines above plaintiffs' property, addressing first the "continuous use" requirement. Even viewing the summary judgment record in the light most favorable to plaintiffs, the undisputed evidence shows that the lines have run across the subject property at their current location since 1928. PacifiCorp acquired the lines and poles from its predecessor in 1958 and replaced a power pole to the south of the subject property in 1990. We conclude that the record on summary judgment requires the finding that PacifiCorp and its predecessors have run lines over the subject property continuously for well over the requisite 10 years.

■ ■ We next address the requirement that the use be "open or notorious." As we noted in *Beers v. Brown*, 204 Or App 395, 403 n 7, 129 P3d 756 (2006), the requirements are disjunctive, meaning that satisfaction of either characteristic is sufficient. A use is "open" if it is clearly visible and apparent. *See, e.g.*, *Montagne v. Elliot*, 193 Or App 639, 652, 92 P3d 731 (2004).

■ Plaintiffs contend that there is a factual dispute as to the visibility of the lines during the entire prescriptive period. The record on summary judgment shows that, at the time plaintiffs purchased the subject property, it was vacant and unimproved and that it was covered with dense trees and

brush. Cliff Motes testified by deposition that, from the adjacent road, he could see power lines in the direction of the subject property, but because there were no markers indicating the boundaries of the subject property, plaintiffs did not know whether the lines actually crossed the property. And because of dense brush, plaintiffs did not venture into the power-line area of the subject property before their purchase to determine whether the power lines actually crossed the subject property. Plaintiffs assumed incorrectly that the lines were at the edge of a county right-of-way between their property and the road and that the subject property began just east of the lines.

Despite plaintiffs' failure to ascertain the exact location of the lines, it is undisputed that the lines were visible, even before vegetation had been cleared from under them, and that Cliff Motes saw them. He testified by deposition that the treetops were about 10 feet under the power lines. A finding that plaintiffs were actually aware of the lines' encroachment on the property is not a prerequisite to a determination that the use itself was "open." *See Davis v. Parke*, 135 Or App 283, 286, 898 P2d 804 (1995) (the servient estate owner's lack of actual knowledge of the property boundary or that an encroachment was occurring on the property does not defeat an adverse possession claim). The visible presence of the lines gave plaintiffs and their predecessors a reasonable opportunity to discover the use by PacifiCorp and its predecessors of the air space to run power lines and whether the lines crossed over their property. *See Foster Auto Parts, Inc. v. City of Portland*, 171 Or App 278, 283, 15 P3d 573 (2000) (the plaintiff's visible use of land established open and notorious use). We conclude that the record on summary judgment requires the conclusion that the lines constituted an open use of the air space above the subject property for the requisite prescriptive period of 10 years.

Because PacifiCorp's use was continuous and open for the requisite prescriptive period, a presumption arises that the use was adverse to the interests of plaintiffs and their predecessors, and the burden shifts to plaintiffs to show that PacifiCorp's use was permissive. *Feldman et ux.*, 196 Or

at 470-71; *Foster Auto Parts, Inc.*, 171 Or App at 283. Plaintiffs have not presented evidence that would defeat that presumption of adverseness.

We reject plaintiffs' contention that the presumption of adverseness does not arise in this case because the subject property was "unenclosed or unemployed." *See Wood*, 276 Or at 56; *Springer v. Durette et ux*, 217 Or 196, 200-01, 342 P2d 132 (1959); *Rendler v. Lincoln County*, 76 Or App 339, 347-48, 709 P2d 721 (1985). Although that rule has been cited, *see, e.g., Wood*, 276 Or at 56, it has never been applied in Oregon. Additionally, it is undisputed that the subject property has long had an irrigation ditch running through it and, in that sense, it was not "unemployed."

Further, we reject plaintiffs' contention that the presumption of adverseness may be overcome by evidence that the use did not interfere with the landowner's own use; that rule applies only in the context of a prescriptive easement over a "preexisting road." *See Skidmore v. Clark*, 205 Or App 592, 597, 135 P3d 367 (2006).

In any event, even assuming that the presumption of adverseness is not applicable or has been overcome, it is undisputed that neither PacifiCorp nor its predecessors ever sought or obtained the permission of the subject property's owners for placement or maintenance of the power lines. Plaintiffs do not dispute that prior owners were aware of the power lines but did not give permission. Accordingly, we conclude that the record on summary judgment requires the finding that PacifiCorp's use was adverse for the requisite period and establishes a prescriptive easement for the running of the transmission lines.

We next consider PacifiCorp's right to enter the subject property in order to maintain the lines and prune vegetation. In opposing such a right, plaintiffs point to a lack of specific evidence that PacifiCorp or its predecessor historically entered the subject property for that purpose. Citing cases holding that the scope of a prescriptive easement is determined and limited by the use by which it was created, *Kondor*, 50 Or App at 61, plaintiffs contend that, because there is no evidence that PacifiCorp or its predecessors have in the past entered the subject property to maintain the wires

and vegetation, any easement may not encompass such a right. However, although PacifiCorp did not have specific records of having entered the subject property to maintain the lines or prune vegetation, PacifiCorp's witnesses testified that it is company practice to inspect every inch of line every four years and that, in light of the nature of the vegetation growing in the area, PacifiCorp must have pruned under the lines over the years.

In any event, as we previously noted, an easement encompasses the right to enter the servient estate to do what is reasonably necessary to maintain the easement. *Baumbach*, 266 Or at 157 n 1. Having established a prescriptive easement for the running of the lines, and especially in light of the numerous state and federal requirements for maintenance of power lines and vegetation under them, we conclude that PacifiCorp's easement encompasses a right to enter the subject property to maintain the lines and the surrounding vegetation.

We turn to PacifiCorp's cross-appeal. PacifiCorp's counterclaim for a prescriptive easement sought access to the subject property for the purposes of inspection, maintenance, repair, upgrade, and replacement of the lines and the right to prune adjacent trees and vegetation. The trial court placed restrictions on the scope of the easement.[2] PacifiCorp asserts two assignments of error on cross-appeal. First, it contends that the trial court erred in determining that the easement

---

[2] The court's general judgment states, in part:

"*This easement does not include the right to upgrade, expand or increase the voltage of the electric power distribution lines which are in place as of the date of this judgment.* In furtherance of PacifiCorp's rights hereunder and the purpose of the Easement, PacifiCorp has the right to keep the right of way described on Exhibits C and D clear of all brush, trees, timber, other hazards and any structures or buildings, except for those structures and buildings which are in place as of the date of this judgment, without payment therefore, which might endanger PacifiCorp's facilities or impede PacifiCorp's activities.

"*PacifiCorp shall not operate or utilize any vehicles on the existing asphalt driveway of the Property, as depicted on Exhibit D.* PacifiCorp may access any portion of the Easement by foot, and PacifiCorp may assess the Easement west of the line * * * by vehicle, for all activities in connection with the purposes for which this Easement has been granted.

"PacifiCorp shall not be liable for any ordinary wear and tear to the Property resulting from any reasonable or expected use of this Easement."

(Emphasis added.)

does not permit PacifiCorp to upgrade or expand the voltage of the lines. Second, PacifiCorp contends that the trial court erred in prohibiting it from operating vehicles on the portion of the easement that lies to the east of the lines and from using plaintiffs' asphalt driveway for access to the lines. We review *de novo* the trial court's judgment concerning the scope of the easement, ORS 19.415(3) (2007); *Martin*, 195 Or App at 594, and reverse.

We first conclude that the trial court erred in prohibiting PacifiCorp from upgrading or expanding the voltage of the lines. In determining the scope of an easement, the court's fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in a practical manner. *Bernards et ux. v. Link and Haynes*, 199 Or 579, 593, 248 P2d 341 (1952), *on reh'g*, 199 Or 579, 263 P2d 794 (1953). Oregon law permits a prescriptive easement holder to change the use of its easement so long as it does not substantially increase the burden on the servient estate. *Firebaugh*, 288 Or at 617-18. Easement holders are entitled to avail themselves of improved methods and technology. *Bernards*, 199 Or at 592 (holders of an express right-of-way were entitled to improve the right-of-way to accommodate a change in use from a railroad to logging road). As the Supreme Court explained in *Bernards*, "[e]asements, which are one of the numerous instrumentalities by which the day's work is done, would thwart progress instead of facilitating it unless those who have easements can avail themselves of the newer and improved methods in the use of the easements." *Id.*

PacifiCorp offered evidence that, due to population growth, there is an increased demand for electricity that will require a voltage increase in the lines in the near future. It is undisputed that, to perform that upgrade, PacifiCorp will not need to enter the subject property. The only visual impact will be a slightly thicker line to accommodate the additional voltage. Further, there will be no additional impact on the land below the lines, because an upgrade in the lines will not require an increase in the width of the easement. On *de novo* review, we find that permitting PacifiCorp to upgrade its lines to a higher voltage will not substantially increase the burdens to plaintiffs' property, and we therefore conclude that the trial court erred in prohibiting PacifiCorp from upgrading its lines to increase the voltage.

■ We also conclude that the trial court erred in prohibiting PacifiCorp from using vehicles on plaintiffs' existing driveway in order to reach the easement. Plaintiffs' asphalt driveway extends onto the easement and is over an area where PacifiCorp formerly could gain access to the power lines with a bucket truck. PacifiCorp's witness testified that repairs of the lines during storms are most safely and efficiently accomplished with a bucket truck.[3] The witness testified that, in light of the surrounding rough terrain, the safest and most direct access to the lines for a bucket truck would be over plaintiffs' driveway. Cliff Motes testified, however, that PacifiCorp's bucket trucks would cause damage to his driveway, which was designed for residential use. Because the trial court was concerned that PacifiCorp's trucks might damage plaintiffs' property, the judgment prohibits PacifiCorp from using plaintiffs' driveway and limits PacifiCorp's vehicle use to the area west of the power lines.[4]

■ As we have previously noted, PacifiCorp's prescriptive easement functions like an express easement. *Firebaugh*, 288 Or at 611 n 2. *See also Evans v. Hogue*, 296 Or 745, 752, 681 P2d 1133 (1984) (stating that "one who has adversely possessed land for the requisite number of years gains ownership rights to the land of a status equal to deeded title"); *Pubols v. Jacobsen*, 91 Or 256, 177 P 629 (1919) (title secured by adverse possession is perfect title). The grant of an easement includes the right to do whatever is necessary by way of repairs, even though damage to the servient estate may result. *Baumbach*, 266 Or at 157 n 1. In *Firebaugh*, the Supreme Court set forth some general guidelines for determining the permissible uses of a prescriptive easement:

> "[I]n determining whether a particular use of a prescriptive easement is permissible, a comparison should be made between (A) the use by which the easement was created,

---

[3] PacifiCorp's operations manager for the Medford area testified:

"[T]he only thing that I could see that we would really need to access [plaintiffs'] property would be if the line came down and we had to get in and splice it. That would be an emergency type situation. It would be necessary for us to access the line immediately and we would drive one of our service bucket trucks in there, something that would reach the line, and we would catch the line off, pull it up and splice it together and complete our repair."

[4] We note that, as ordered by the trial court, PacifiCorp's easement for maintenance extends 12 feet to the east and to the west of the power lines. There is no issue on appeal concerning the dimensions of PacifiCorp's easement.

and (B) the proposed use considering these factors: (1) the relative burdens upon the servient tenement; (2) the nature and character of the uses of the easement; and (3) the purposes achieved through the uses of the easement."

288 Or at 618.

Considering each of those factors, we agree with PacifiCorp that the trial court's limitations are unduly restrictive. PacifiCorp's easement includes the right to access the subject property in order to maintain its power lines. PacifiCorp's interest predates plaintiffs' ownership of the subject property. The testimony at trial established that, before plaintiffs developed the property, PacifiCorp's vehicles could gain access to the lines from the county road. Currently, other than from plaintiffs' driveway, the only vehicular access to the lines is through brush that must be cleared or over a steep bank that must first be graded. The need for access to the lines with a bucket truck will rarely arise, but if it does, the time and expense associated with coming in from the county road would impose a significantly greater burden on PacifiCorp than if it had access by way of plaintiffs' driveway. We conclude that that portion of the trial court's ruling prohibiting PacifiCorp from gaining access to the easement from plaintiffs' driveway and prohibiting the use of vehicles on the portion of the easement to the east of the lines constitutes a substantial interference with PacifiCorp's preexisting right.

We recognize that allowing PacifiCorp's vehicles to have access to the lines over plaintiffs' driveway poses a risk of damage to the driveway. For that reason, the judgment should expressly limit such access to emergency circumstances that require access to the lines with a bucket truck and should require PacifiCorp to reimburse plaintiffs for any damage to their property caused by its use.

Affirmed on appeal; on cross-appeal, reversed and remanded for modification of judgment so as to permit PacifiCorp's upgrade of electrical transmission lines and to permit vehicular access to easement over plaintiffs' driveway in event of an emergency, with proviso that PacifiCorp shall pay costs to repair any damage caused by its vehicles.