Argued and submitted June 10, 2010, affirmed March 2, 2011

Laurel SANDER;
Robert Rothfeder; Cynthia Rothfeder;
Jeffrey Kuhn; Gary White; Diane White;
Tracy Armstrong Stansfield,
Trustee of the 2002 Separate Property Trust;
and Brylan Schultz,
*Plaintiffs-Respondents,*

*v.*

J. Brent McKINLEY
and Connie K. McKinley,
husband and wife,
*Defendants-Appellants.*

Wallowa County Circuit Court
070812897; A140385

250 P3d 939

Thomas W. Sondag argued the cause for appellants. With him on the briefs were Hostetter Knapp, LLP, D. Rahn Hostetter, and Lane Powell PC.

Timothy J. O'Hanlon argued the cause for respondents. With him on the brief was Mautz Baum & O'Hanlon LLP.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

**ROSENBLUM, J.**

This is an action by plaintiffs for a prescriptive easement across defendants' land. Beginning around 1970, plaintiffs' predecessors in interest, the Vosses, used a primitive road across what is now defendants' land to access their land, what is now plaintiffs' land. In 1993 or 1994, defendants' predecessors in interest, the Olcotts, put up a fence across the road and put a gate at the end of the fence, rather than in the middle, where the road was, thus forcing any vehicles to take a somewhat different route. The Vosses continued to use the road, following the new route. The trial court concluded that the Vosses had established a prescriptive easement no later than 1988 and that the easement had been relocated by mutual consent of the Vosses and the Olcotts. It therefore entered judgment recognizing that plaintiffs have an easement along the new route. On appeal, defendants argue that plaintiffs failed to prove that the Vosses' use of the original road was hostile and that there is no evidence to support the conclusion that, if established, the easement was relocated by mutual consent. They also contend that the Vosses' use of the relocated road was permissive and, thus, that plaintiffs have not established a prescriptive easement along that route. On *de novo* review, we conclude that a prescriptive easement was established on the original road and that the easement was relocated by mutual consent of the Vosses and the Olcotts. Accordingly, we affirm.

■ We take the following facts from the record. Although we review the facts *de novo*,[1] we give deference to the trial court's credibility findings that are based on the court's opportunity to observe the witnesses. *State ex rel Juv. Dept. v. G.P.*, 131 Or App 313, 319, 884 P2d 885 (1994). Thus, we state the facts consistently with the trial court's credibility determinations.

---

[1] A 2009 amendment to ORS 19.415(3) made *de novo* review in most equity cases discretionary. *See* Or Laws 2009, ch 231, § 2. Because the notice of appeal in this case was filed before the effective date of the amendment, we apply the 2007 version, under which *de novo* review is required.

Not to scale. Neither parcel is wholly depicted.

N

Sander property

existing gate

original road

new fencing

existing gate

Kinney Lake

new gate

new route

parking area

new gate

McKinley property

County road

new gate

The dispute in this case centers on two adjoining parcels of land in Wallowa County known, for purposes of this litigation, as the "Sander property," a 320-acre parcel that plaintiffs own, and the "McKinley property," an irregular-shaped 275-acre parcel that defendants own, which lies to the west and south of the Sander property. The Sander property was purchased by Warren and Marguerite Voss in two pieces—half in 1968 and half in 1971. The Vosses were cattle ranchers and used the property to graze cattle. Their son Dwayne worked for the family operation. The elder Vosses have since died; Dwayne Voss and his wife inherited the Sander property in 2003. They sold it to plaintiffs in 2007.

The Sander property consists of an "upper" and a "lower" portion, both of which are relatively level, and a

sloped portion that runs between the upper and lower portions. The lower portion—the eastern side—is accessible from Wallowa Mountain Road (not pictured), which runs along that side of the property. However, the slope between the upper and lower portions is so steep that, from that road, the upper portion can be reached only on foot or horseback. The upper portion can be reached in a vehicle only from the west. From the time the Voss family acquired the Sander property, they reached the upper portion via a dirt road across the McKinley property. That road runs from a county road along the southwest boundary of the McKinley property to two points on the common boundary between the Sander and McKinley properties. Gates at those two points allow access to the Sander property. The dirt road is the basis of the dispute in this case. The road has never been improved; it has not been graded or surfaced in any way. It consists of two narrow dirt tracks in the grass, which are the result of vehicles repeatedly following the same route.

As is material to this case, the McKinley property was originally owned by Dale Potter, who purchased it in 1969. Potter did not live in the area at the time, and, shortly after he purchased the property, he began leasing it to a local rancher for grazing livestock. In 1987 or 1988, Potter leased the property to Dwayne Voss, who also used it for grazing. In 1993, Potter sold the property to Richard and Debra Olcott. The warranty deed from Potter stated that the property was free of encumbrances except as described in an attached exhibit; the exhibit made no mention of an easement for access to the Sander property.

Kinney Lake, a popular recreation site, lies in part on the western side of the McKinley property. The Olcotts did not want to deny the public access to the lake, but they were concerned about detrimental uses of the property. According to Richard Olcott, "[l]ocal people, kids primarily, would—would come up there and—and take their four-wheel drives out across the property and squirrel around and—and rut it up." In addition, the Olcotts were concerned about people setting off fireworks and leaving trash on the property. They also believed that the property was being damaged by overgrazing.

Shortly after the Olcotts purchased the McKinley property, Richard Olcott visited the property and found Dwayne Voss working there. Voss's lease of the McKinley property was still in effect at that time. Olcott told Voss that he was concerned about the land being damaged by four-wheel drives and by overgrazing. He said that he intended to put up fencing in order to minimize overgrazing and to eliminate the ruts left by four-wheel drives. Voss told Olcott that he thought it was a good idea.

Over the course of the next year, the Olcotts proceeded with the plan to put up fencing. To discourage visitors to the lake from driving on the property, they created a parking area on the west side of the lake and erected fencing around the lake and along the county road so that visitors could walk, but not drive, around the lake. To address the overgrazing problem, the Olcotts ran two fences across the property, thus dividing it into three pastures and allowing better grazing management. One of those fences runs east and west between the east side of Kinney Lake and the southwest corner of the Sander property. The dirt road that the Vosses had been using to reach the upper portion of the Sander property ran north and south about half way between the lake and the corner of the Sander property. The new fence runs across that road.

To allow cattle and necessary vehicles onto the property and between the three pastures, the Olcotts put several gates in the new fences, including one in the fence between Kinney Lake and the corner of the Sander property. However, they did not place the gate where the road to the Sander property ran—roughly the midpoint of the fence. Rather, they placed it at the east end of the fence, at the corner of the Sander property—approximately 500 feet from where the fence crossed the road. They did so for two reasons. First, consistent with their intent to discourage recreational visitors from driving on the pastures, they wanted the gate to be as far from the lake as possible, to minimize its visibility from the lake. As Richard Olcott put it, they "wanted to keep it away from the view of—of the general public at Kinney Lake, so they would not get the idea that there was * * * an access point that possibly they could get a four-wheel drive

through." Second, according to Olcott, "[i]t's a lot easier to put a gate in a corner than it is in the middle."

Voss continued to use the same road to reach the Sander property, other than where the new fence blocked it. To reach the other side of the fence, he drove from the county road to the new gate (and from there to the first gate on the property line), effectively creating a new route through the pasture.

At the end of 1993, while the fencing project was ongoing, the Olcotts allowed Voss's lease on the McKinley property to expire. They leased the property to another neighboring cattle rancher the following year.

The Olcotts finished the fencing project in 1994. As one of the last parts of the project, they installed a gate across the county road, near the parking area they had constructed at Kinney Lake. The county told Richard Olcott that he could put a lock on the gate, but that he would have to take it off if anyone complained. Shortly thereafter, Voss discovered that the gate was locked. He cut the lock off in order to get through. Later, he called Olcott and told him that he needed to have a key if Olcott was going to continue locking the gate, because he needed to access the Sander property. Olcott asked whether Voss could access it from the east. Voss explained that doing so was difficult. Olcott said that he did not mind if Voss crossed the McKinley property when he needed to tend his cattle and the fences on the boundary. Not long after, Olcott removed the lock from the gate.

The Olcotts sold the McKinley property to defendants in 2003. As noted above, the same year, Dwayne and Carol Voss inherited the Sander property from Dwayne's parents' estate. The Vosses entered an agreement to sell the property to plaintiffs in 2006. Plaintiffs' initial purchase offer was contingent on being able to obtain an easement for ingress and egress to the upper part of the property. Dwayne Voss had always assumed that there was an easement in place, but he discovered that no written easement had ever been recorded. The Vosses' realtor called defendant Brent McKinley and asked if he would grant an easement; he declined. Voss then started exploring whether he could claim

a prescriptive easement. Plaintiffs thereafter agreed to waive the easement condition in their purchase offer in exchange for an agreement from Voss to assist plaintiffs in obtaining an easement after the sale closed. After the sale closed, plaintiffs brought this action for a prescriptive easement.

At trial, Voss testified, among other things, that he had always assumed that he had the right to cross the McKinley property and that no one could stop him. He stated that he had never asked anyone for permission to cross the property. Plaintiffs also introduced deposition testimony from Potter.[2] Potter stated that he had never actually seen the Vosses on his property but that he assumed that they were crossing it because the road led to the two gates on the common property line. He also stated that he had always believed that the Vosses had the right to cross the property, that the Vosses had never asked for permission to use the road, and that he had never granted them, or anyone else, permission to use it. Defendants introduced testimony from several witnesses, including Richard Olcott and Brent McKinley, both of whom testified that they had given Voss permission to cross the McKinley property for the limited purposes of tending his cattle and repairing fences.

After the case was tried, the trial court concluded that the Vosses had established a prescriptive easement by 1987 or 1988, when Dwayne Voss began leasing the McKinley property from Potter. The court noted that there is conflicting evidence as to whether the Olcotts and defendants thereafter granted Voss permission to use the road. It did not decide that issue, however, stating that any permission that was given had no legal effect because the easement had already ripened. With respect to the route having been changed, the court concluded that the Vosses had not abandoned or otherwise relinquished the easement, and it noted that no one had claimed that it was extinguished by prescription. Rather, it concluded, the Vosses and the Olcotts had

---

[2] Potter's deposition was videotaped and played for the trial court. His deposition testimony was transcribed along with all of the live testimony at trial. The transcript is part of the record on appeal, but the video recording of the deposition is not.

relocated the easement by implicit mutual consent. Accordingly, it entered judgment in plaintiffs' favor, establishing an easement for purposes of checking and mending fences, checking and transporting livestock, and recreation.

On appeal, defendants challenge the trial court's conclusion that plaintiffs established a prescriptive easement. Specifically, they contend that plaintiffs failed to establish the "adverse use" element of a prescriptive easement. In support of that contention, they argue that the Vosses' use of the road did not interfere with their, or their predecessors', use of the McKinley property and that the Vosses' use was expressly permissive. Defendants urge us to disregard Potter's deposition testimony, arguing that Potter did not actually know that the Vosses were using the road and that his belief that the Vosses had the right to use the road was factually unfounded. They also argue that, under ORS 93.850(2)(b),[3] Potter's testimony is legally ineffective, given that his deed to the Olcotts asserted that the McKinley property was free from any encumbrances related to the Sander property. Defendants also argue that the easement that the trial court determined to have ripened by 1988 was not the same easement that the court concluded exists now, given that the route has changed. Finally, they contend that there is no evidence supporting the court's conclusion that the easement was relocated by mutual consent.

In response, plaintiffs argue that it is irrelevant that the Vosses' use of the road did not interfere with defendants' predecessors' use of the McKinley property. Plaintiffs contend that interference comes into play only if a prescriptive easement claimant seeks to establish the "adverseness" element of the claim by means of an evidentiary presumption, which we explain in more detail below. Plaintiffs argue that they established the element of adversity directly, by showing that the Vosses' use of the road was without permission.

---

[3] ORS 93.850(2)(b) provides that a warranty deed has the following effect:

"The grantor, the heirs, successors and assigns of the grantor, shall be forever estopped from asserting that the grantor had, at the date of the deed, an estate or interest in the land less than that estate or interest which the deed purported to convey and the deed shall pass any and all after acquired title."

Thus, plaintiffs assert that they need not rely on the presumption or show that the Vosses' use of the road interfered with defendants' predecessors' use of the property. With respect to Potter's deposition testimony, plaintiffs argue that defendants failed to preserve their objection under ORS 93.850(2)(b). On the merits, they argue, among other things, that the statute did not preclude Potter from testifying about his observations concerning the Vosses' use of the road.

■■  Easements by prescription are not favored by the law. *Wood v. Woodcock*, 276 Or 49, 56, 554 P2d 151 (1976). A party seeking to establish a prescriptive easement must show, by clear and convincing evidence, that the party's—or the party's predecessors in interest—use of the property was open or notorious, adverse to the rights of the owner, and continuous for 10 years. ORS 12.050; *Martin v. G. B. Enterprises, LLC*, 195 Or App 592, 595-96, 98 P3d 1168 (2004). For evidence to be "clear and convincing," the truth of the asserted facts must be highly probable. *Beers v. Brown*, 204 Or App 395, 403, 129 P3d 756, *rev den*, 341 Or 579 (2006). In this case, the only issue is whether plaintiffs proved the "adverseness" element of their claim.

■  As the parties' arguments here suggest, a non-owner's use of property is presumed to have been adverse if it is shown to have been open and notorious for at least 10 years, and the burden shifts to the property owner to rebut the presumption. *Feldman et ux v. Knapp et ux*, 196 Or 453, 470-71, 250 P2d 92 (1952) (quoting *Coventon v. Seufert*, 23 Or 548, 550-52, 32 P 508 (1893)). The property owner may rebut the presumption by, among other means, showing "that the claimed easement is over an existing way and that the claimant's use of the way did not interfere with the servient owner's use of it." *McGrath v. Bradley*, 238 Or App 269, 274 n 5, 242 P3d 670 (2010).

■■  That said, as plaintiffs argue, an easement claimant need not rely on that presumption to establish the element of adverse use. Adverseness can be established directly by showing that the claimant's use was not in subordination to the rights of the property owner. *Kondor v. Prose*, 50 Or App 55, 60, 622 P2d 741 (1981). A claimant's mistaken belief that

he or she has the right to use the servient property is sufficient to establish adverse use. *Id.* In this case, plaintiffs contend that they established adversity directly and thus do not rely on the presumption. Because they do not rely on the presumption, we agree with plaintiffs that it is immaterial that the Vosses' use of the McKinley property did not interfere with any of its respective owners' use of it.

■ We turn to whether plaintiffs established that the Vosses' use of the property was, indeed, adverse. Defendants contend that it was not, citing evidence that Richard Olcott and Brent McKinley gave Dwayne Voss permission to use the road for purposes of tending his cattle. As noted, the trial court did not resolve the question whether Voss's use was permissive after the Olcotts acquired the property and declined to renew Voss's lease, because it concluded that a prescriptive easement had already ripened at that point— that is, that an easement ripened while Potter owned the McKinley property. We agree. Voss testified that he always believed that his family had the right to cross the McKinley property and that he never asked for or received permission from Potter to use the road. The trial court expressly found Voss to be credible, and we defer to that finding. *See D'Abbracci v. Shaw-Bastian*, 201 Or App 108, 125, 117 P3d 1032 (2005) ("Ordinarily, we defer to a trial court's credibility findings that are based on that court's superior opportunity to observe the demeanor of the witnesses.").

Plaintiffs' position that the Vosses' use of the McKinley property was adverse is bolstered by Potter's deposition testimony that the Vosses never asked for permission to use the road and that he never gave such permission. The trial court, which viewed the video recording of Potter's deposition, expressly found him to be a credible witness. Again, given that court's superior opportunity to observe Potter's demeanor, we defer to that finding.

■ As noted above, defendants contest the legal effectiveness of Potter's testimony. We turn briefly to that issue. ORS 93.850(2)(b) provides that a warranty deed, which Potter used to convey the McKinley property to the Olcotts, has the following effect:

"The grantor, the heirs, successors and assigns of the grantor, shall be forever estopped from asserting that the grantor had, at the date of the deed, an estate or interest in the land less than that estate or interest which the deed purported to convey and the deed shall pass any and all after acquired title."

Defendants argue that, under that statute, Potter was precluded from asserting that the McKinley property was burdened by an easement in the Vosses' favor when he sold the property and consequently, that we can give his deposition testimony no legal effect. Defendants acknowledge that, in the trial court, they did not raise that statute or argue that Potter's testimony was legally ineffective. They argue, however, that ORS 93.850(2)(b) is a substantive rule rather than an evidentiary one and, thus, that they may raise it on appeal notwithstanding their failure to object to its admission at trial. Alternatively, they contend that the trial court's consideration of Potter's testimony amounted to plain error, and they urge us to disregard his statements.

Plaintiffs respond that, even if defendants were not required to object to the admission of Potter's deposition testimony, preservation principles required that they alert the trial court to their position that the testimony was legally ineffective, which defendants did not do. On the merits, plaintiffs argue that ORS 93.850(2)(b) applies only to disputes between grantors and grantees and thus has no application in this case. They also contend that, even assuming that ORS 93.850(2)(b) precluded Potter from testifying that he believed that the Vosses had the right to cross the McKinley property—in other words, that he believed that the property was subject to an easement—it did not preclude him from testifying about what had happened on the property and about his interactions with the Vosses.

We need not decide whether defendants' argument runs afoul of preservation principles or whether ORS 93.850(2)(b) applies beyond disputes between grantors and grantees. Assuming, without deciding, that defendants may raise their argument for the first time on appeal, that the statute applies in the circumstances of this case, and that it precluded Potter from testifying that he believed that the Vosses had the right to cross his property, we agree with

plaintiffs that the statute did not bar Potter from stating that the Vosses never asked for permission to use the road and that he never gave such permission. Those statements do not amount to an assertion that Potter had "an estate or interest in the land less than that estate or interest which the deed purported to convey" to the Olcotts. *See* ORS 93.850(2)(b).

Those statements from Potter, together with Dwayne Voss's testimony, establish, by clear and convincing evidence, that the Vosses' use of the road on the McKinley property was not in subordination to Potter's rights and, thus, that their use was adverse. The record demonstrates that, for more than 10 years during the 1970s and 1980s, the Vosses used the road without permission. It follows that a prescriptive easement ripened during that time.

■ We turn next to defendants' argument that any easement that was established at that time is not the same as the easement in which the trial court quieted title, given that the route across the McKinley property changed when the Olcotts put up the fencing in 1993 and 1994. In defendants' view, even if plaintiffs proved that the Vosses had established a prescriptive easement over the original route, they did not prove that an easement was established over the current route. The trial court addressed that issue by concluding that the easement had been relocated by the implied mutual consent of the Vosses and the Olcotts. Defendants argue that there is no evidence to support that conclusion. We disagree.

■ Consent to relocate an easement may be implied by the parties' conduct. *See Ericsson v. Braukman*, 111 Or App 57, 61, 824 P2d 1174, *rev den*, 313 Or 210 (1992) (quoting Bruce, *Law of Easements and Licenses in Land* § 7.03(1)(c) (1988) ("[A]n agreement to relocate may be implied from the parties' actions, such as when an easement holder uses a new location established by the owner of the servient estate or when a landowner stands by while the easement holder utilizes a different route.")). Sometime after the Olcotts put up the fence across the road, Richard Olcott placed a lock on the gate near Kinney Lake. Dwayne Voss called him and said that he needed a key so he could access the Sander property. Olcott asked Voss whether he could access it from the east, and Voss explained that doing so was difficult. Olcott then

said that he did not mind if Voss crossed the McKinley property to tend his cattle and fences. Given that the original road was at that point blocked by the new fencing and that there was no discussion of putting a gate in the fence where the original road ran, it was clear to both men that Voss would have to follow a different route to reach the Sander property. Thus, we agree with the trial court that it is appropriate to infer that both consented to the road being relocated. Accordingly, we conclude that, although the Vosses' easement rights initially applied to the original route, the same rights governed their use of the new route. It follows that the trial court properly quieted title in a prescriptive easement over the present route.

Affirmed.